## NATIONAL LABOR RELATIONS BOARD v. SKINNER & KENNEDY STATIONERY CO.

No. 472.

Circuit Court of Appeals, Eighth Circuit.

July 25, 1940.

Rehearing Denied Aug. 16, 1940.

Maurice J. Nicoson, of Washington, D. C. (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Laurence A. Knapp, Asst. Gen. Counsel, and Samuel Edes and William J. Isaacson, all of Washington, D. C., on the brief), for petitioner.

Richard F. Moll, of St. Louis, Mo. (Francis M. Curlee, of St. Louis, Mo., on the brief), for respondent.

Before WOODROUGH and THOMAS, Circuit Judges, and BELL, District Judge.

THOMAS, Circuit Judge.

In this proceeding the National Labor Relations Board petitions for the enforcement of its order of July 26, 1939, against

the Skinner & Kennedy Stationery Company of St. Louis, Missouri. The order was issued pursuant to section 10(c) of the National Labor Relations Act, 49 Stat. 449, U.S.C.Supp. IV, Title 29 sec. 151 et seq., 29 U.S.C.A. § 151 et seq.

The respondent resists the enforcement of the order, prays that the petition be dismissed and the order set aside. Resistance to enforcement is based upon the ground that the findings of fact and conclusions of law resulting in the order are not supported by the evidence or the law.

The respondent is engaged in commercial printing, binding and distributing books, calendars and stationery supplies and other products at its plant in St. Louis, Missouri. During the month of April, 1938, it employed 120 persons in its business, 67 as factory employees and 53 in office and clerical work. In the proceedings before the Board a complaint was filed May 27, 1938. The complaint was based upon charges filed by St. Louis Printing Pressmen's Union No. 6, Inc., St. Louis Typographical Union No. 8, Bookbinder's Union No. 18, Franklin Association No. 43, and Bindery Women's Union No. 55, members of the Allied Printing Trades Council of St. Louis, Missouri, hereinafter called the Union. The complaint, in so far as material in this proceeding, alleged that respondent (1) had dominated and interfered with the formation of a labor organization of its employees known as the Grasshopper Welfare Association, hereinafter called the Association, and contributed to its support; (2) had discriminatorily discharged and refused to reinstate two of its employees, Mathias W. Eckert and Joseph Hillgaertner, because of their union activities; and (3) that by these acts and in other ways it had interfered with, restrained and coerced its employees in the exercise of their rights guaranteed in section 7 of the Act, and that it had engaged in and was engaging in unfair labor practices within the meaning of section 8 of the Act.

After hearing and argument the Board sustained the foregoing allegations of the complaint and ordered respondent (1) to cease and desist from (a) dominating and supporting the Association, (b) discouraging membership in the Union or other organization of its employees; and (2) (a) to withdraw recognition from the Association as the representative of its employees for the purpose of collective bargaining and to disestablish it as such representative, (b) to reinstate Eckert and to make him whole for any loss suffered by him from the date of his discharge to the date of the offer of reinstatement, and (c) to make Hillgaertner whole for any loss suffered by him. Hillgaertner since his discharge having accepted another position does not seek reinstatement.

Under the heading "The Unfair Labor Practices" the Board found "that the respondent dominated and interfered with the formation and administration of the Association, and contributed support to it, thereby interfering with, restraining, and coercing its employees in the exercise of the rights guaranteed in Section 7 of the Act." The facts upon which this finding is based are not in dispute. In brief these facts are: In May, 1937, a committee of the Union began a drive to organize respondent's employees. "Authorization for representation" cards and circulars announcing an organization meeting for June 9 were distributed among them. Between 25 and 40 of the employees attended the meeting. On the day following the meeting, Crossman, respondent's vice president in charge of production, stated to Mathias W. Eckert, a foreman: "We can't wait any longer. We have got to do something now. We have got to do something to counteract this thing." Later in the day, the respondent's foremen met for the purpose of organizing an "inside" union. Shortly thereafter Eckert distributed among the employees ballots printed in the plant. The ballots propounded the question whether the employees desired an "inside" union. Fifty-four employees voted for and 18 against an "inside" union. Thereupon the Association was organized, officers were elected, and a committee was appointed to draft bylaws. Crossman furnished a member of the committee forms of by-laws suitable for use. With respondent's consent by-laws were prepared in its office with the aid of a stenographer; and, after certain changes had been recommended by Crossman, they were adopted and printed at respondent's expense.

Respondent's president then told a member of the committee: "The next thing you want to do is to ask the Company for recognition of your union." A letter under date of June 29 requested recognition of the Association as the sole bar-

gaining agency for all the production employees. Respondent requested proof that it represented a majority of the employees. A list of members was submitted on July 5. On July 13, respondent wrote that it "cheerfully" recognized the Association as the sole bargaining agency of all its production employees. The Association, however, never entered into collective bargaining negotiations with the respondent.

In August, 1937, respondent contributed $40 toward the expenses of a picnic sponsored by the Association. In December the Association experienced difficulties in securing attendance at its meetings. Respondent's superintendent instructed the foremen to notify the employees to attend such meetings.

Respondent admits all the foregoing facts but says there are other circumstances which show that the Association was a truly independent organization. The circumstances cited are that (1) the employees had an opportunity by secret ballot to express their desires as to what organization should represent them; (2) that at the election of officers Emery, one of the foremen, presented a slate which was rejected; and (3) there is testimony that employees attended outside union meetings and informed the foremen of their activity and membership in the outside unions.

 The fact that the record contains testimony inconsistent with the findings of the Board, where as here there is substantial testimony supporting the Board's findings, would not justify the court in setting aside the Board's findings nor in refusing to enforce its order based thereon. "The findings of the Board as to the facts, if supported by evidence, shall be conclusive." 49 Stat. 449, 453, § 10(e); National Labor Relations Board v. Waterman Steamship Corp., 309 U.S. 206, 208, 60 S.Ct. 493, 84 L.Ed. 704. The law does not require that the evidence to support the Board's findings must all be consistent nor undisputed.

The respondent resists the enforcement of the order to offer Eckert reinstatement to his former position and to make him whole for loss of pay on the alleged grounds that (a) he is not an employee within the meaning of the Act; (b) he has obtained regular and substantially equivalent employment; (c) he was discharged for reasons of economy and not for union membership or activity; and (d) the order relating to him is beyond the Board's jurisdiction and power.

Eckert worked for respondent for approximately 10 years as foreman of the cylinder press room. He attended the Union organization meeting of June 9, 1937, but thereafter cooperated with the other foremen in organizing the Association. After the election of officers he severed his connections with the Association and on July 12 signed a card authorizing the Union to represent him. Thereafter Crossman called him to his office and told him that the respondent was not going to "run a union shop", and proceeded to talk to him "about joining the union and staying out of the union" and pointed out to him that he was "getting older" and that he ought to "take care" of himself. On August 27, 1937, the respondent's superintendent Beyer, by direction of Crossman, discharged Eckert.

About two and a half years before Eckert was discharged respondent began the making of calendars. Crossman testified that Eckert's work had always been satisfactory prior to that time and that his work on commercial printing was still satisfactory, but that he "didn't seem to want to acquire" knowledge of the calendar business; that his "attitude" was wrong as to calendars. For that reason and for the purpose of effecting an economy Crossman ordered his discharge. As foreman, Eckert was receiving $60.50 per week. A short time prior to his discharge Beyer was made superintendent with power to reorganize the plant. One Emery was made foreman of the cylinder press room to take Eckert's place at a salary of $45 a week.

Eckert's discharge occurred shortly after the respondent recognized the Association. The Board noted this circumstance. It also noted that Crossman had repeatedly questioned Eckert regarding the Union, and that the testimony showed that Eckert had learned the calendar business and that the complaints in regard to his ignorance of that business all referred to the time when it was introduced in the plant or shortly thereafter. The Board concluded that the discharge was due to an intention on the part of respondent to discourage its employees from aligning themselves with the Union.

With this background we turn to a consideration of reasons assigned by respondent for refusing to obey the order of the Board to offer reinstatement to Eckert.

 It is first argued that Eckert is not an employee within the meaning of the

Act. The contention is that being a foreman he is an employer and not an employee. Section 2(2) of the Act is relied upon wherein an "employer" is defined to include "any person acting in the interest of an employer." Section 2(3) of the Act is ignored. It provides that "The term 'employee' shall include any employee." There is no inconsistency in these provisions when facts are taken into consideration. A foreman, in his relation to his employer, is an employee, while in his relation to the laborers under him he is the representative of the employer and within the definition of section 2(2) of the Act. Nothing in the Act excepts foremen from its benefits nor from protection against discrimination nor unfair labor practices of the master.

Respondent next contends that Eckert has obtained "other regular and substantially equivalent employment" within the meaning of Section 2(3) of the Act. He was receiving $60.50 per week when he was discharged on August 27, 1937. He afterwards secured employment at $48 per week and then at $50 per week. Emery, who succeeded him at respondent's plant was first paid $45 per week and later $47.50 per week. Hence, it is said, Eckert was not injured by his discharge, but was benefited. It is not disputed, however, that Emery was not assigned all the duties which Eckert had performed as foreman. This contention is without merit.

It is next said that Eckert was discharged for reasons of economy and not because of Union membership. The Board found otherwise, and there is substantial evidence to support its finding. At the time Crossman ordered his discharge he gave as his reason Eckert's inefficiency in the calendar business. This the Board found to be a mere pretext. When within a month prior to his discharge Crossman called Eckert to his office to talk about the Unions he mentioned neither economy nor inefficiency. He then said that "we aren't going to run a union shop". He then told Eckert that he was getting older and ought to take care of himself. Six months before his discharge, and practically two years after he had been at work on calendars, he was given a 10 per cent. increase in salary. These are all substantial evidentiary facts tending to support the finding of the Board, and a finding thus supported can not be reversed by the court. Washington, Virginia & Maryland Coach Co. v. National Labor Relations Board, 301 U.S. 142, 146, 57 S.Ct. 648, 81 L.Ed. 965; National Labor Relations Board v. Waterman S. S. Co., supra.

Finally, it is argued that the order is beyond the power of the Board. This contention is based upon the situation resulting from changes made in the organization of respondent's plant about the time of Eckert's discharge. The duties which had been performed by Eckert were divided between Beyer, the superintendent, and Emery who succeeded Eckert as foreman. The employer may of course operate his business in his own way, but he may not evade compliance with orders of the Board by means of subterfuge. The order provides that Eckert shall be offered "reinstatement to his former position, without prejudice to his seniority and other rights and privileges." This does not mean that he must be offered a position requiring performance of exactly each and every duty formerly performed by him. The position must be substantially the same and equivalent to his former position. This is said to be impossible because he had no rights of seniority. If that be true there is no necessity for apprehending danger of prejudice to such rights. It is further said that among his "other rights and privileges" was the right to hire and discharge employees under him, and that that right has been transferred to Beyer. The power of a foreman to hire and discharge is not so much a right as it is a duty. The words of the order "rights and privileges" can not fairly be construed to apply to such duties. If an offer of reinstatement to his former position were made to Eckert without such duty attached it is possible that he would not complain. The argument anticipates difficulties which may not arise.

The contentions with respect to the discharge of Hillgaertner are similar to those relating to Eckert's case. Hillgaertner was a pressman's helper. He was discharged on the same day that Eckert was discharged without any warning. He was active in the Union. Respondent claims that he was discharged for economic reasons. There is substantial evidence to support the Board's finding that he was discharged because of his affiliation with and activities on behalf of the Union. We cannot substitute our judgment for that of the Board even though we might reach a different conclusion were we to consider

the evidence de novo. National Labor Relations Board v. Waterman S. S. Corp., supra; National Labor Relations Board v. Lane Cotton Mills Co., 5 Cir., 111 F.2d 814, 817.

The petition to enforce the order is granted. An appropriate decree will be entered accordingly.