## NATIONAL LABOR RELATIONS BOARD v. PACKARD MOTOR CAR CO. AND (FOREMAN'S LEAGUE FOR EDUCATION AND ASSOCIATION et al., Interveners).

### No. 10157.

Circuit Court of Appeals, Sixth Circuit.

Aug. 12, 1946.

Rehearing Denied Sept. 30, 1946.

Writ of Certiorari Granted Dec. 9, 1946.

See 67 S.Ct. 357.

SIMONS, Circuit Judge, dissenting.

Ruth Weyand, of Washington, D. C. (David A. Morse, A. Norman Somers, Joseph B. Robison, and Mozart G. Ratner, all of Washington, D. C., on the brief), for petitioner.

Walter M. Nelson, of Detroit, Mich., for Foreman's Ass'n of America.

Paul R. Conaghan, of Chicago, Ill., for Carnegie-Illinois Steel Corporation.

Louis F. Dahling, of Detroit, Mich. (Louis F. Dahling and Bodman, Longley, Bogle, Middleton & Armstrong, all of Detroit, Mich., on the brief), for Packard Motor Car Co.

Harry P. Jeffrey, of Dayton, Ohio, for Foreman's League for Education and Association and National Association of Foremen, intervening parties respondent.

Rathbone, Perry, Kelley & Drye, of New York City, for Chrysler Corporation, amicus curiae.

Before SIMONS, ALLEN, and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This is a petition by the National Labor Relations Board to enforce an order issued in a proceeding charging unfair labor practices against the respondent, the Packard Motor Car Company. On December 6, 1945, the Board determined that Packard's "general foremen, foremen, assistant foremen and special assignment men" employed at the company's plants in Detroit, Michigan, constitute a unit appropriate for the purposes of collective bargaining within the meaning of section 9(b) of the National Labor Relations Act, 29 U.S.C.A. § 159(b). Pursuant to this order an election was held in which a majority voted that they wished to be represented by the Foreman's Association of America, one of the intervenors here. Packard refused to negotiate with the Foreman's Association, upon the ground that foremen are not employees under the Act, and are therefore not entitled to its privileges. At the hearing of the unfair labor case the Board decided that foremen, while they represent the employer for certain purposes, are employees in their relationship to the company and are entitled to the right of collective bargaining within the terms of the statute. It further found that the unit theretofore designated, including the four levels of supervisory employees—general foremen, foremen, assistant foremen and special assignment men—was an appropriate unit. The usual cease and desist order was issued, and it is this order which the Board asks this court to enforce.

Packard concededly is engaged in commerce. If the privileges of National Labor Relations Act are given to foremen and the unit is appropriate refusal to comply with the order of the Board is admitted, and the order must be upheld.

Packard conducts its principal manufacturing operations in two main plants broken down into approximately 20 divisions, which in turn are subdivided into approximately 300 departments. The total number of employees at the plants involved as of November 30, 1944, was 32,533. The general foremen number 125; the foremen 643, the assistant foremen 273, and the special assignment men 65. All classes of foremen have certain privileges not enjoyed by the rank and file worker. Their salaries are substantially larger than the wages received by the production force. General foremen, with overtime pay, receive approximately $500 a month; foremen approximately $450 with overtime; assistant foremen approximately $410 with overtime. The special assignment men are paid about the same as general foremen or foremen. These supervisory employees are paid for justifiable absences. They are given a more generous vacation with pay than other workers, and receive separation pay when they leave the company. They are paid for holidays, and permitted to report half an hour late for work without suffering deductions in pay.

The foremen are the front line of management. At Packard the general foreman is in charge of one or more departments, sometimes as high as four departments. In some departments there are no foremen, only assistant foremen, and in such cases the duties of the assistant foremen correspond to those of the foremen. When a general foreman has charge of several departments, he sometimes has an assistant foreman in charge of each department. In general, foreman and assistant foremen have charge of a division of the work of the entire department, or in certain instances they are the direct assistants under the general foreman in connection with the work of the whole department. The special assignment men are trouble shooters who move from division to division in the plant, but they have the qualifications of general foremen and foremen, and also their authority.

At Packard each foreman is responsible for the quantity and quality of production of the work in the area under his supervision. He must check the hourly produc-

tion report and maintain production in his department. He must see that any breakdown is remedied, and that repairs are made. He has to instruct the foremen or assistant foremen under him and see to it that they properly execute their duties. None of the men in the four classes involved here performs any manual work, each of them being principally responsible for the maintenance of quality and quantity of production in the area under his supervision. The general foreman makes recommendations to the superintendent as to the rates of pay, transfer, rehire, lay-off, discharge and discipline of the foremen. These recommendations are usually followed. The foremen and assistant foremen likewise make recommendations which are usually followed, concerning the pay, discharge, demotion, discipline, etc., of the workers under them. All classes of foremen make suggestions for the improvement of production, and these suggestions are very largely adopted. In an exhaustive report filed January 19, 1945, made by a panel of distinguished economists established by the National War Labor Board to deal with disputes in major automobile and shipping industries involving supervisors, including that between Packard and certain of its foremen, the panel recognized that for a long time the responsibilities and authority of the foreman had been undergoing a slow change, resulting in a drop in his authority and in his responsibility for making policies, and a rise in the foreman's responsibility for executing policies. However, the panel concluded:

"These trends do not mean that the foreman's job is becoming less exacting or that it can be filled by less competent people. On the contrary, the need for able men in the posts of foremen seems to be growing. The foreman may be given more and more ready-made policies to execute, more and more standard practices to observe in executing them, and more and more help from a variety of service departments, but he is also held to higher and higher standards in meeting production schedules, in maintaining standards of quality, and in dealing with personnel. Furthermore, higher management cannot escape dependence upon the foreman's knowledge of men and conditions and upon the wisdom and fairness of the foreman's judgment. On many matters the foreman may only recommend action, but his recommendations must usually be accepted by superiors who know too little about the circumstances of specific cases to reject the foreman's recommendation. Hence no matter how well conceived the company's production and labor policies may be at the top, they are in fact no better than they become at the hands of the foremen who execute them."

The demand of the foremen that they be allowed to organize in unions has been intensified as a result of the recent world war, and of the enormous expansion in industries such as Packard, not only in the number of production workers, but in the number of supervisory employees and foremen. In Packard there were from 250 to 280 foremen in the years 1938 to 1940. In June, 1944, there were 900 foremen. As a result of this increase, the panel found that the greatest fear of foremen today is that they will be laid off or demoted when cutbacks and cancellations of war orders occur, and stated that the interest of foremen in organizing is out of proportion to the nature and gravity of their grievances. As found by the panel, the interest of the supervisory employees in bargaining rights appears to spring from two principal causes: "(1) the desire of foremen to retain their jobs, which they know to be unusually good ones, and to escape demotions when cutbacks come; and (2) the desire of the foremen for freer interchange of viewpoints with higher management, particularly better opportunities to present such grievances as may arise."

The Board for a number of years held that foremen and supervisory employees generally do not constitute an appropriate unit for the purpose of collective bargaining, but in June, 1942, in Matter of Union Collieries Coal Co., 41 N.L.R.B. 961, it held that a unit of assistant foremen, fire bosses, weigh bosses and coal inspectors was appropriate for the purposes of collective bargaining, and later, in Matter of Godchaux Sugars, Inc., 44 N.L.R.B. 874, certified a local C.I.O. union as the bargaining agent of working and non-working foremen of the company. However, it excluded a gen-

eral foreman. In Matter of Stanley Company of America, 45 N.L.R.B. 625, on November 17, 1942, it found that the unit of managers, assistant managers, utilitarians and treasurers in the Stanley Company's chain of theaters was not an appropriate unit. At the same time it dismissed a petition of an aircraft union which sought to represent a unit consisting of general foremen, foremen and assistant foremen of the Boeing Aircrafts Company, 45 N.L.R.B. 630. Shortly after the decision in the Union Collieries and Godchaux Sugars cases a bill was introduced in Congress making the National Labor Relations Act inapplicable to foremen. While this bill was being considered in committee, the Board on May 10, 1943, rendered a decision in Matter of Maryland Dry Dock Co., 49 N.L.R.B. 733, in which, by a two to one vote, the decisions in the Union Collieries and Godchaux Sugars cases were specifically overruled. The decision stated that except in the printing and maritime trades where foremen traditionally have organized, the Board would not find units of foremen appropriate for the purpose of collective bargaining. The Board commented upon "the dangers inherent in the commingling of management and employee functions," and the "possible restrictive effect upon the organizational freedom of rank and file employees." It continued:

"The very nature of a foreman's duties make him an instrumentality of management in dealing with labor. The duty of supervision with which he is principally charged implies a delegation of authority with respect to the selection, promotion and discharge of the workers in this section. Although the delegation of authority is no longer plenary in modern factories which have a central personnel system, there is no doubt that even the function of advising or recommending action with regard to personnel is sufficient to command respect and instill fear in the minds of subordinates. To hold that the National Labor Relations Act contemplated the representation of supervisory employees by the same organizations which might represent the subordinates would be to view the statute as repudiating the historic prohibition of the common law against fiduciaries serving conflicting interests."

The Board followed the Maryland Dry Dock decision in Matter of Boeing Aircraft Company, 51 N.L.R.B. 66; Matter of Murray Corp. of America, 51 N.L.R.B. 94, and Matter of General Motors Corp., 51 N.L.R.B. 457. In the instant case, therefore, the Board has reversed its view as to the availability of foremen for collective bargaining under the Act. It states that following the Maryland Dry Dock decision, the Board noted that the potential dangers which concerned the majority of the Board in that case had not materialized in cases where the petitioning foreman is independent and remains so. Finding the Foreman's Association of America in this case to be independent, the Board held that to deny the representation would deprive the foremen of a substantial right, and to grant it would not be a disadvantage to industry.

The controlling questions are: (1) Whether the supervisory employees involved herein are entitled to or excluded from the privileges accorded by the National Labor Relations Act and (2) if they are entitled to the privileges of the Act whether the unit established by the Board is appropriate to effectuate the purposes of the Act.

If these foremen fall within the coverage of the statute it is immaterial whether their grievances are or are not great, for they have a right, just as employees of the rank and file, to organize and bargain collectively. This is the principal issue in the case.

The controlling statutes are sections 152 (2) and (3) and section 157 of Title 29 U. S.C., 29 U.S.C.A. §§ 152(2, 3), 157. Section 157 provides that "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection." If the foreman, under this section, is rightly considered an employee, the Board's decision that he has the right to organize with other foremen in the independent union involved in this case, is correct. The serious controversy is precipitat-

ed by the definitions in section 152 of the terms "employer" and "employee." Packard contends that within section 152(2) the foreman is an employer for he is a person "acting in the interest of an employer, directly * * *," and that the foreman's duties are so preeminently those of management that he cannot be considered even for the purpose of this case as an employee. The Board maintains that under section 152 (3) it is plain that the foreman should be regarded as an employee, because the term "employee" is specifically defined as including "any employee," excluding only agricultural laborers, domestic servants, or persons employed by their immediate families.

The legislative history does not assist in the solution of the problem. The statute neither specifically includes among employees supervisory officials of any kind nor specifically mentions officials, as does the Railway Labor Act, Title 45 U.S.C., section 151, 45 U.S.C.A. § 151 which lists "an employee or subordinate official" among the employees covered by the Act. Nor does it exclude supervisory officials, from the employees covered unless by implication in the phrase "acting in the interest of an employer, directly or indirectly."

The foreman plainly acts in the interest of management. As succinctly stated in Bulletin 66 of the United States Department of Labor, Division of Labor Standards, "The foreman is the operative executive of management * * *, the official contact for workers and shop stewards * * *, the department executive. * * *" This same bulletin states, and under this record the statement is correct, "It goes without saying that the foreman's primary responsibility is to protect the interests and rights of management."

Moreover, the Board and the courts have repeatedly held that the foreman acts for his employer to such an extent that his statements and conduct, if hostile to the union, make the employer liable under an unfair labor charge. International Association of Machinists v. National Labor Relations Board, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; National Labor Relations Board v. Marquette Metal Products Co., 6 Cir., 152 F.2d 964; National Labor Relations Board v. Link-Belt Co., 311 U.S.

584, 598, 61 S.Ct. 358, 85 L.Ed. 368. This is true even though the employer has not authorized such statements or conduct. Matter of Tenn-Copper Co., 9 N.L.R.B. 117, 118; Matter of Inland Steel Co., 9 N.L.R.B. 783, 808; Matter of American Steel Scrapper Co., 29 N.L.R.B. 939, 943; Matter of Schult Trailer, Inc., 28 N.L.R.B. 975, 993. In Matter of Emsco Derrick & Equipment Co., 11 N.L.R.B. 79, 87, the Board significantly declared: "* * * the supervisor acts as an agent for the employer, and his acts are necessarily those of the employer unless effectively disavowed." The same doctrine was emphatically declared in H. J. Heinz Co. v. National Labor Relations Board, 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309, in which the employer was held responsible although it had not proposed or stimulated the formation of a plant union. The court held the employer responsible for unauthorized activities of supervisory employees, not upon the principle of agency or respondeat superior, but under the broad provisions of the Act condemning such activities as constituting an unfair labor practice.

Likewise the membership of foremen and supervisory employees in an independent or plant union has repeatedly been held by the Board to constitute evidence of employer domination calling for the disestablishment of the independent or plant union. These decisions recognize the close relationship between the foreman and management, and are relied on by Packard as establishing not only that foremen constitute the front line of management, but that they act so directly "in the interest of an employer" that they are excluded from the benefits of section 157, Title 29 U.S.C., 29 U.S.C.A. § 157. But these considerations merely outline the difficulty of the problem rather than decide it. As stated by the chairman of the Board, "The issues in this case can not be analyzed in terms of black and white. They present a study in gray. Both company and Union present their arguments in good faith; no one can be wholly right or wholly wrong in a matter of this sort."

We think that in view of the decision of the Supreme Court in National

Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 860, 88 L.Ed. 1170, and also in view of the holdings of other courts with reference to the status of the foreman, it cannot be said that he is automatically deprived of the right of collective bargaining to which employees are entitled under section 157, because he has joined the ranks of front-line management. The Supreme Court said in the Hearst case that the term "employee," "like other provisions, must be understood with reference to the purpose of the Act and the facts involved in the economic relationship." Considering the definition of employer in section 152(2), "with reference to the purpose of the Act," we think it does not include foremen. No statement of any congressional committee or representative appears including foremen in the definition of "employer." The sweeping character of the definition is explained by the fact that Congress evidently thought the employer must be held responsible for any effort of his supervisors to destroy collective bargaining.

In spite of the numerous decisions penalizing the employer for acts of his foremen, held to constitute unfair labor practice, we find no case in which a foreman has ever been held to be deprived of the right of organizing with his fellow-foremen. In fact in the one case in which the precise point was raised, National Labor Relations Board v. Skinner & Kennedy Stationery Co., 8 Cir., 113 F.2d 667, the court held that the foreman is an employee for the purpose of pressing his personal needs and demands upon his employer. In Eagle-Picher Mining & Smelting Co. v. National Labor Relations Board, 8 Cir., 119 F.2d 903, affirmed on other grounds, International Union of Mine, Mill and Smelter Workers, Local No. 15, v. Eagle-Picher Mining & Smelting Co., 325 U.S 335, 65 S.Ct. 1166, 89 L.Ed. 1649, a chemist who was head of the research department was held to be an employee. In National Labor Relations Board v. Star Publishing Co., 9 Cir., 97 F.2d 465, branch managers were held to be employees, while in National Labor Relations Board v. American Potash & Chemical Corp., 9 Cir., 98 F.2d 488, a foreman was reinstated upon the ground that he had been unfairly discharged. Cf. Hazel-Atlas Glass Co. v. National Labor Relations Board, 4 Cir., 127 F.2d 109. In Jones & Laughlin Steel Corp. v. National Labor Relations Board, 6 Cir., 146 F.2d 718, 720, and National Labor Relations Board v. Jones & Laughlin Steel Corp., 6 Cir., 154 F.2d 932, 934, the dual character of the relationship was pointed out with reference to plant guards, it being held that the plant guards are employees for purposes of organization; but because of their public functions, the court denied the petition of the Board to enforce an order permitting the plant guards to be organized by the same union which represented the production employees.

■ We adhere to the principles stated in Jones & Laughlin Steel Corp. v. National Labor Relations Board, and consistent with that declaration, we conclude that the foreman, although he is part of the front line of management in his obligation to get out the work, to negotiate grievances and to perform the manifold responsibilities heretofore described more fully, in his relationship to his employer with reference to his own wages and conditions of labor is an employee, entitled to the benefits of section 157.

■■ The Board's decision that the supervisory employees involved may properly be grouped in one unit is also correct. The authority to determine the appropriate unit is primarily vested in the Board. Section 159(b). If reasonably exercised, its decision cannot be set aside. Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; National Labor Relations Board v. Hearst Publications, Inc., supra, 322 U.S. 133, 64 S.Ct. 851, 88 L.Ed. 1170. The duties vested in the general foremen, foremen, assistant foremen and special assignment men have been described above. The similarity of their obligations which compels them at times to act interchangeably, and of the privileges which set them all off from the workers of the rank and file, make them a group by themselves, necessarily experiencing the same needs, having in general the same conception of the relationship between them and their employer.

The decision of the Board is justified under this record.

██ Since the union involved is independent and neither a part of nor controlled by the union representing the production workers, we also uphold the decision as to the propriety of the exclusive bargaining representative named by the Board. This is a situation diametrically opposite to that presented in Jones & Laughlin Steel Corp. v. National Labor Relations Board, supra, where the bargaining agent designated was the identical union which represented the production workers. As found by the panel of the War Labor Board, it is not appropriate for supervisors "who are responsible for discipline, assignment of work, rate adjustments and promotions, who represent the employers in handling grievances of rank and file workers, and who generally represent higher management in dealing with the rank and file workers, to be subject to discipline by a union which is controlled directly or indirectly by the men whom they supervise. The effectiveness of management requires that it have its own uncontrolled agents to represent it in dealing with the rank and file, just as the rank and file are entitled to have their own uncontrolled representatives for dealing with higher management."

So far as the present designation is concerned, it leaves the foremen uncontrolled agents in dealing with the rank and file, and no reason appears to anticipate that the independence of the Foreman's Association of America will in the immediate future be destroyed.

The petition of the Board for an order of enforcement is granted, and a decree will be issued in conformity with this opinion.

SIMONS, Circuit Judge (dissenting).

Undoubtedly in ordinary parlance, and by common law tests foremen are employees. So also are superintendents, department heads, managers, and executive officers. It has been made plain however by the Supreme Court that in interpreting the National Labor Relations Act common law tests are not controlling. So those who in other aspects may be independent contractors are brought within the sweep of the term "employees" by "underlying economic facts rather than technically and exclusively by previously established legal classifications." N.L.R.B. v. Hearst Publications, 322 U.S. 129, 64 S.Ct. 859, 88 L.Ed. 1170. Similarly the responsibility of employers is not narrowly to be restricted by the doctrine of respondeat superior, and in controversies respecting unfair labor practices supervisory employees are held to speak for management, even though unauthorized or expressly forbidden so to do. International Ass'n of Machinists v. N.L.R.B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; Heinz v. N.L.R.B., 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309; N.L.R.B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368. This principle we have dutifully applied. Consumers Power Co. v. N.L.R.B., 6 Cir., 113 F.2d 38; N.L.R.B. v. Thompson Products, 6 Cir., 130 F.2d 363; N.L.R.B. v. Mt. Clemens Pottery Co., 6 Cir., 147 F.2d 262.

As disclosed in the majority opinion, respondent's foremen are a privileged class, perform no manual work, and constitute the front line of management. Their recommendations concerning pay, transfer, lay-off, discharge, demotion, and discipline are usually followed. It has been held that if foremen join or encourage plant unions, such unions are employer dominated, and so company unions. International Ass'n of Machinists v. N.L.R.B., supra. If foremen seek information as to union organization plans it is employer espionage condemned by the Act. N.L.R.B. v. Cleveland-Cliffs Co., 6 Cir., 133 F.2d 295. Foremen are employers not only by reason of their duties and responsibilities, but by the inescapable implication of Sec. 152(2) which classifies as an employer one who is "acting in the interest of an employer, directly or indirectly." Sec. 152(3) refers to but does not define "employee." The two sections must be read in pari materia, and so considered the breadth of the one necessarily limits the ambit of the other.

Up to the present case, the Labor Board had held in a long series of decisions that foremen do not constitute an available unit for collective bargaining. The basis for present departure from earlier decisions is

that dangers previously apprehended have not materialized. We are concerned however with the interpretation of a statute and not the making of a policy. Congress formulates policy and the court's function is to ascertain the Congressional purpose from the terms of its enactment. Since controlling authority interprets the Labor Act as clothing supervisory employees with the authority and responsibility of employers, collective bargaining provisions are not available to them. I am in accord with the earlier view of the Labor Board and the panel of the War Labor Board and would deny enforcement to the present petition.

PER CURIAM.

The petition for rehearing is denied.

SIMONS, Circuit Judge (dissenting).

Review of the legislative history of the Wagner Labor Act, the labor literature of the period preceding and following its enactment, and the many decisions interpreting and applying it, leads inescapably to the following conclusions: (1) That the dominant purpose in the minds of its proponents was the fashioning of mechanism by which "laborers," "workers" and "production men" in the great mass industries, until then impotent, might achieve bargaining power on a parity with the economic power which the development of such industries had lodged in the hands of the employing class;[1] (2) that prior to and for a substantial period following the enactment, supervisory employees were not identified with the labor movement, were for the most part without labor consciousness, generally considered themselves allied with the employing class and occupying a status above

standards needing unionization;[2] and (3) that orders of the Labor Board imposing discipline upon employers for violations of the Act stem almost invariably from discrimination, threats, espionage and domination by such supervisory employees.[3]

Wherefore, I adhere to the views expressed in the dissent to the decision in the above cause, always keeping in mind that the Labor Act must be construed in the light of the social and economic conditions that brought about its passage; and I would grant the petition for rehearing.

---

[1] Testimony of William Green, President of the American Federation of Labor; Francis Biddle, Chairman of the NLRB under the NIRA; Lloyd K. Garrison, Dean of the University of Wisconsin Law School, first Chairman of NLRB under NIRA; Charlton Ogburn, counsel for the AFL; reported in "Hearings before the Committee on Education and Labor, United States Senate, 74th Congress, 1st Session, on S 1958 (1935) U. S. Gov't Printing Office." Senator Wagner's discussion of the Wagner Act, 79th Congressional Record No. 101, p. 7846 et seq., May 15, 1935; Senator Wagner, 79th Congressional Record No. 102, pp. 7949 to 7960, 7967 to 7980, May 16, 1935; Senator Norris, Vol. 79 Congressional Record No. 102, pp. 7949 to 7960, 7967 to 7980.

[2] The Status of Supervisory Employees under the NLRB. Walter L. Daykin, Associate Professor of Labor Economics, University of Iowa, 29 Iowa Law Review 297. In re Maryland Drydock Co., 49 NLRB 733; In re Union Colleries Coal Co., 41 NLRA 165, dissenting opinion of Gerard D. Reilly.

[3] Almost any Labor Board case decided by a Court of Appeals or the Supreme Court of the United States.