AMERICAN STEEL FOUNDRIES v. NATIONAL LABOR RELATIONS BOARD.
No. 9138.

Circuit Court of Appeals, Seventh Circuit.
Dec. 28, 1946.

---

[8] 28 U.S.C.A. § 391.

Ernest S. Ballard, Walter I. Deffenbaugh, and W. McNeil Kennedy, all of Chicago, Ill. (Pope & Ballard, of Chicago, Ill., of counsel), for petitioner.

A. Norman Somers, Asst. Gen. Counsel, Ruth Weyand, Gerhard P. Van Arkel, Gen. Counsel, Morris P. Glushien, Associate Gen. Counsel, and Henry W. Lehmann, all of Washington, D. C., for respondent.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The petitioner, American Steel Foundries, seeks the review of an order of the National Labor Relations Board. The Board found that the petitioner had violated Sections 8(1) and (3) of the National Labor Relations Act[1] in the discharge of two supervisory personnel, Tamburo and Nansen, because of their activities in and about the organization and support of a chapter of the Foreman's Association of America, an unaffiliated union for supervisory personnel only. The usual order to cease and desist was entered by the Board, and the petitioner was ordered further to offer Tamburo and Nansen restoration to their former positions and to make them whole for the loss of any pay they suffered because of their discharge. The Board has asked enforcement of its order.

Two questions are presented. First, since Tamburo and Nansen are supervisory personnel, are they "employees" within the meaning of the Act and entitled to the protection of the Act? Secondly, if they are "employees" entitled to such protection, is there substantial evidence in the record to support the Board's findings that they were discharged because of their union membership and activities? We answer both questions in the affirmative.

Section 2 of the Act, (49 Stat. 449, 450, 29 U.S.C.A. 152) defines "employer" and "employee." The material parts of the Section provide as follows:

"When used in this Act— * * *

"(2) The term 'employer' includes any person acting in the interest of an employer, directly or indirectly * * * .

"(3) The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer * * *."

At the time of the discharges, Tamburo was a foreman in the chipping department; Nansen was chief departmental clerk in the timekeeping department, immediately under the works auditor, McKnight. Neither was policy making personnel, nor had either any authority to hire or fire. They saw to it that orders from

---

[1] 29 U.S.C.A. §§ 151–166.

policy makers above them were carried out. They were both very low in the hierarchy of supervisory personnel.

■■ The petitioner argues that since Tamburo and Nansen were supervisory personnel, they, in the terms of Section 2(2) of the statute, acted in the interest of the employer and were by the definition of the statute to be considered as in the employer status and could not be employees. This proves too much. Every person in the petitioner's employ acts in the interest of the employer. The act of the lowliest employee if done in the course of his employment may bind the employer. We think the statute meant that only the personnel that acted in the interest of the employer in matters envisaged by the Act would be considered to be in the employer status. Whenever a supervisory worker, whether high or low in the managerial hierarchy, acts in the interests of the employer, that is, carries out the employer's known policy toward the organizational activities of its workers, as for instance in opposition to unionization in general or in favor of a company union, such supervisory worker *may* take on the complexion of his employer. International Association of Machinists v. National Labor Relations Board, 311 U. S. 72, 80, 81, 61 S.Ct. 83, 85 L. Ed. 50; H. J. Heinz Co. v. National Labor Relations Board, 311 U. S. 514, 520, 61 S.Ct. 320, 85 L. Ed. 309; R. R. Donnelley Co. v. National Labor Relations Board, 7 Cir., 156 F.2d 416, 420. Such conduct of a supervisory worker does not mean that he has lost his status as an employee. It means only that the conquences of his acts *may* be visited upon his employer, and in that sense only does such worker occupy an employer status. The statute defining an "employee" is broad enough to cover every type of personnel, supervisory or otherwise. The statute does not limit the term. We know of no case, and none has been cited, where it has been held that supervisory personnel are not employees within the meaning of the Act and not entitled to all of the benefits therein conferred upon an employee.

In the very recent case of National Labor Relations Board v. Packard Motor Car Co., 157 F.2d 80, the Sixth Circuit held that foremen, higher in the hierarchy of supervisory personnel than the parties in the instant cause, were employees within the meaning of and entitled to the protection of the Act. Judge Allen, speaking for the court, reviewed the authorities and concluded (157 F.2d at page 85):

"* * * that the foreman, although he is part of the front line of management in his obligation to get out the work, to negotiate grievances and to perform the manifold responsibilities heretofore described more fully, in his relationship to his employer with reference to his own wages and conditions of labor is an employee, entitled to the benefits of section 157."

We accept the able opinion of Judge Allen and the Sixth Circuit and hold that Tamburo and Nansen, although foremen, were employees within the meaning of the Act and entitled to the protection thereof.

As to the second question: Is there substantial evidence that Tamburo and Nansen were fired because of their union membership and activities?

Tamburo first entered the petitioner's employ in 1921 as a laborer in the chipping department. In 1924 he became a chipper and worked until 1926, when he quit. In 1934 he returned to work for the petitioner in the same department, and in 1941 he was promoted to foreman. In 1942 he was made an instructor of chippers, a position which he held until July 1943 when he was returned to the position of foreman. There was some evidence that Tamburo had been appointed an instructor because as a foreman he did not get along at all times with the men under his supervision. However, when he was relieved as an instructor, he was again made a foreman, in another department, where he worked until discharged on November 11, 1943.

On October 10, 1943 Tamburo was elected chairman of a committee of the union selected for the purpose of negotiating with the petitioner. The secretary of the committee was one Conlin. As such representatives of the union, Tamburo and Conlin on October 11 called on the works manager and his assistant to request a meeting between representatives of the petitioner and the union to discuss recognition of the union as bargaining representative of the supervisory

employees. The petitioner never granted the conference. On November 9 at the request of the union Tamburo attempted to discuss a grievance of one Slankowski with the petitioner's assistant works manager, who declined to recognize him as a union representative or to discuss the grievance with him. On November 10, 1943 Tamburo made a second inquiry about a meeting with the union and was rebuffed again. Later that day he informed the works manager's office that the next day at 3 P.M. the foremen would call in a body to discuss recognition of the union. At 2 P. M. November 11, 1943 Tamburo was discharged. No reason therefor was given. Conlin had previously been demoted and had quit.

On November 3, 1943 the rank and file employees, members of Local 1206, United Steel Workers of America, affiliated with the Congress of Industrial Organizations, had gone on a strike. Tamburo, before he became a foreman, had been president of this Local. On November 7, 1943 Tamburo and another foreman, Hayes, were directed by the foreman's union to appear before a meeting of the members of the Local to assure the striking members that the foremen would not take their jobs and to urge the men to return to work. This Tamburo and Hayes accordingly did.

The petitioner in its answer claimed Tamburo was discharged for "inefficiency and insubordination." No evidence of insubordination appears. The inefficiency pointed to was the trouble Tamburo had had with some of his men many months before. There was testimony by Hayes, who was shop steward or grievance representative in the department over which Tamburo had jurisdiction, that no grievance of any kind was ever reported to him by any of the men working under Tamburo. The petitioner's works manager and assistant works manager testified that Tamburo was discharged because he appeared before Local 1206—this discharge being without any investigation as to what Tamburo said or did. It was claimed that it was contrary to the company's policy for a supervisory official to appear before a meeting of the employees, but no such policy had ever been revealed to anyone before.

Nansen, who entered the petitioner's employ in 1939, was chief departmental clerk in the timekeeping department. He was active in the affairs of the union, and as a representative of the union, he sought to present the claim of one Slankowski, an employee under him, for a position made available in his department. The petitioner's assistant works manager had selected one Johnson from another department for this position. The members of the union thought that the appointment of Johnson instead of Slankowski to this position was in violation of Slankowski's seniority rights. On November 9, 1943, as Nansen and Slankowski sought to present the claim or grievance of Slankowski to the petitioner's auditor, Nansen acting at the time as a union representative, the auditor said he would not deal with the union. The union then asked Tamburo to present Slankowski's grievance, which he attempted without success to do, as we have noted. Nansen was discharged on November 11, a few hours after Tamburo.

Both Tamburo and Nansen had been satisfactory employees and had received promotions and increases in pay from the petitioner. The efforts of the petitioner to show at the hearing that Nansen's work had not been satisfactory at all times were countered by evidence that he had been praised for his work only recently by his superiors and that the petitioner had obtained an occupational deferment for him from Selective Service, stating that he would be with the company six months longer.

■ If Tamburo and Nansen were discharged because of the opposition of the petitioner to the union and because of their activities in the union's affairs, the petitioner's action was a violation of Sections 8(1) and (3) of the Act. If discharged for reasons other than union membership and activities relating thereto, there was no violation of the Act.

■ The Board concluded from the circumstances that the reasons for the discharge of Tamburo and Nansen were their union membership and activities. Such conclusion is not unreasonable and is supported by substantial evidence. The peti-

tioner's opposition to the unionization of its foremen, the closeness in time of the discharge of Tamburo and Nansen and the demotion of Conlin in relation to their prominent activities in the union, and the remoteness of the purported reasons for Tamburo's and Nansen's discharge all support the findings of the Board.

We find no error in the record, and the petition for review is denied. The Board's request for enforcement of its order is granted.