CARMINE J. BISOGNO *v.* CONNECTICUT STATE BOARD OF LABOR RELATIONS

SUPERIOR COURT   FAIRFIELD COUNTY AT BRIDGEPORT   FILE No. 110222

Memorandum filed March 16, 1960

*Raymond C. Lyddy,* of Bridgeport, and *Isadore Chaplowe,* of Stratford, for the plaintiff.

*Alphonse C. Jachimczyk,* of Stamford, for the defendant.

KLAU, J.  This is an appeal by the plaintiff from the certification and order of the Connecticut state board of labor relations entered in case No. E-1015 and case No. U-1016, both of which cases were consolidated by the board on July 16, 1959.  The board in the first case certified the Cleaners, Dyers and Laundry Workers Union, Local 364, A.C.W.A., as the exclusive representative for the purpose of collective bargaining by a majority of the pressers, cleaners and spotters, driver, tailor and drop-store employees, excluding executives, supervisors and the shoe repairman employed by the plaintiff.

The order in the second case, entered after hearing on a charge by the union that the plaintiff was engaged in unfair labor practices within the meaning of General Statutes § 31-105 (4), (5), required the plaintiff to (1) cease and desist from (a) discouraging membership in Cleaners, Dyers and Laundry Workers Union, Local 364, A.C.W.A., A.F.L.–C.I.O., or any other labor organization of the employees' own choosing by discriminating against employees in regard to hire or tenure of employment or terms and conditions of employment; (b) requiring as a condition of employment that the plaintiff's employees or those seeking employment refrain from joining or assisting a labor organization of their own choosing; and (c) in any manner interfering with, restraining or coercing the plaintiff's employees in their rights to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing and to engage in concerted activities for the purposes of collective bargaining, or other mu-

tual aid or protection as guaranteed by § 31-104 of the Labor Relations Act; and (2) take affirmative action in offering Leonard W. Dyer, one of the plaintiff's employees, immediate employment, to make him whole for any loss of pay he may have suffered by reason of his discharge, and to perform certain other acts arising from the finding of the board that the plaintiff had been guilty of an unfair labor practice under the Labor Relations Act in discharging the said Dyer.

The plaintiff in his appeal to the court merely states that he is aggrieved by the certification and order of the board and prays that the certification and order of said board be modified or set aside. Nowhere does he specify in his petition the reasons why or how he claims to be aggrieved or in what particular the unfair labor practice order is challenged. Such a specification ought to be set forth in the appeal itself to permit the court to determine whether in fact he is aggrieved and to provide an assignment of errors to be reviewed. *Tyler* v. *Board of Zoning Appeals,* 145 Conn. 655. However, the plaintiff in his brief sets forth that the board erred in its certification and order in the following manner: (1) The board erred in its certification of employees eligible to vote in the ordered election; (2) The board erred in its decision on the results of the voting, its designation of the union as the employees' bargaining representative, and its designations of the unit to be covered; (3) The board erred in its decision that the employer committed an unfair labor practice in connection with the layoff of Leonard W. Dyer.

The case was heard by the court on the record certified by the board in accordance with the provisions of § 31-109 (d) of the General Statutes. Included in the record is the statement of the case as contained in the board's decision. The plaintiff in

his brief does not contest this statement, so it need not be repeated here.

Chapter 561 of the General Statutes, entitled "Labor Relations Act," was originally enacted in 1945, predicated upon and its phraseology patterned after the National Labor Relations Act of 1935. 49 Stat. 449, 29 U.S.C. §§ 151-166. "For this reason, the judicial interpretation frequently accorded the federal act is of great assistance and persuasive force in the interpretation of our own act." *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations,* 142 Conn. 457, 460. The errors raised by the plaintiff in his brief, items one and two referred to above, concerned the representation proceedings which culminated in the certification of representatives. The Connecticut Labor Relations Act is modeled closely after the original National Labor Relations Act. Section 31-109 of the General Statutes provides that in unfair labor practice proceedings, the board may petition the Superior Court for enforcement of its orders. It also provides, in paragraph (d), that a person aggrieved "by a final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in the superior court for the county *where the unfair labor practice was alleged to have occurred . . .*" (italics supplied). Under parallel provisions in the national act, (49 Stat. 455, 29 U.S.C. § 160 [f]), the federal courts have consistently held that a certification of bargaining representatives is not an appealable order, so that the courts have no jurisdiction to entertain a purported appeal therefrom. *American Federation of Labor* v. *National Labor Relations Board,* 308 U.S. 401, 407; *De Pratter* v. *Farmer,* 232 F.2d 74. This is true, also, where the representation proceeding has been consolidated (as here) with an unfair labor practice proceeding. While the order in the latter aspect of the case is appealable, the certifi-

cation is not. *National Labor Relations Board* v. *Falk Corporation,* 308 U.S. 453. It would, therefore, appear that this court has no jurisdiction to entertain the plaintiff's purported appeal from the board's certification in the present case. It, therefore, follows that none of the points raised by the plaintiff, except his appeal from the order of the board finding that he had been guilty of an unfair labor practice with respect to Leonard W. Dyer and ordering affirmative action with respect thereto, can properly be considered.

Let us, however, assume that the court has jurisdiction to consider the errors raised by the plaintiff under items one and two in his brief by reason of the appeal from the order entered regarding unfair labor practices of the plaintiff, although the board made no order of an unfair labor practice with respect to the failure of the plaintiff to bargain collectively with the representatives of employees (§ 31-105 [6]), and the order entered does not involve the representation proceedings except with respect to Leonard Dyer's eligibility to participate in the election. *National Labor Relations Board* v. *Worcester Woolen Mills Corporation,* 170 F.2d 13, cert. denied, 336 U.S. 903; *Fitzgerald* v. *Douds,* 167 F.2d 714, 716; *Connecticut Light & Power Co.* v. *Leedom,* 174 F. Sup. 171, 174.

The pertinent provision concerning certification of representatives for the purposes of collective bargaining are to be found in § 31-106 of the General Statutes. This corresponds in a large part with § 159 of the National Labor Relations Act. 49 Stat. 453, as amended, 29 U.S.C. § 159. Under our act, as with the federal act, where a controversy concerning the representation of employees has arisen, the board is required to determine the appropriate bargaining unit. "In order to secure to employees the full benefit of this chapter, the board shall decide

in each case whether the appropriate unit shall be an employer unit, craft unit, plant unit or any other unit, except that when the majority of the employees of a craft so decide, the board shall designate such craft as the appropriate unit." General Statutes § 31-106 (a). Following extensive hearings held on June 18 and 23, the board, in its decision and direction of election, forming a part of the record, dated June 29, 1959, directed that an election be held to ascertain the exclusive representative for collective bargaining with the plaintiff and designated eleven individual employees of the plaintiff to participate in said election to determine whether they desired to be represented by the union and, further, indicated that due to the necessity of holding the election as expeditiously as possible because of a strike being in progress with picket lines, a decision concerning findings of fact and conclusions of law would issue later. The designation of the eleven individuals certified to vote at the election clearly indicated which employees were included in the bargaining unit established by the board. In its decision of October 5, the board found both as a fact and as a conclusion of law: "(3) All pressers, cleaners and spotters, driver, tailor and drop-store employees, excluding executives, supervisors and the shoe repairman, employed by the Respondent, constitute a unit appropriate for the purposes of collective bargaining with respect to rates of pay, wages and hours of employment or other conditions of employment."

Under the similar section of the National Labor Relations Act, 49 Stat. 453, as amended, 29 U.S.C. § 159 (b), federal courts have repeatedly held that the board has a wide discretion in the selection of the appropriate bargaining unit and its decision is conclusive unless it is arbitrary or capricious. *Pittsburgh Plate Glass Co.* v. *National Labor Relations Board,* 313 U.S. 149, rehearing denied, 313 U.S. 599;

*National Labor Relations Board* v. *Botany Worsted Mills,* 133 F.2d 876, cert. denied, 319 U.S. 751; *National Labor Relations Board* v. *American Steel Buck Corporation,* 227 F.2d 927; *National Labor Relations Board* v. *Lettie Lee, Inc.,* 140 F.2d 243; *National Labor Relations Board* v. *White Construction & Engineering Co.,* 204 F.2d 950; *National Labor Relations Board* v. *Packard Motor Car Co.,* 157 F.2d 80, aff'd, 330 U.S. 485. The question before the board was not whether supervisory employees or the shoe repairman were employees under the provisions of § 31-101 (6) but whether they should be included as employees within the appropriate bargaining unit established by the board in this case. In limiting the bargaining unit to the employees connected with the dry cleaning operation and in excluding executives, supervisory employees and the shoe repairman, it cannot be said that the board acted illegally or abused its discretion, and its determination of the bargaining unit must stand. *National Labor Relations Board* v. *E. C. Atkins & Co.,* 331 U.S. 398, 403; CCH Lab. L. Rep. ¶ 2605. Here, the decision of the board in refusing to count the vote of Anthony Vitulano, the shoe repairman, was proper, since he was not an employee included within the bargaining unit established by the board.

The next question to determine is whether the board erred in counting certain ballots and in refusing to count the ballot of Dorothy Galumbowski, who although not certified to vote, did in fact vote but her ballot was challenged and such challenge was sustained by the board. There was substantial evidence before the board from which it could find that this individual had left her employment four months before and that when she returned after the strike was on, she was given work other than that she had previously performed. Although it is true that employees temporarily laid off are entitled to vote if

they have a reasonable expectation of re-employment within a reasonable time in the future *(National Labor Relations Board* v. *Fresh'nd-Aire Co.,* 226 F.2d 737), the board did not find this to be the fact with respect to her employment, but on the contrary found that her employment after she came back was a new employment and, therefore, she was not eligible to vote.

With respect to the eligibility of Dorothy Minella, counter girl, to vote, the board found that she was employed in a supervisory capacity and, therefore, not within the bargaining unit established by the board. The board found that she was in full charge of the plant at all times in the absence of the plaintiff owner and consequently was ineligible to participate in the election. With respect to the eligibility of Wilhelmina Brown to vote, the board found that her employment had ceased prior to the petition and strike of certain other employees and that her re-employment after the strike had commenced was a new employment and a new hiring.

Since James Holley, Ophelia Williams and Malvale Evans, although certified to vote and participate in the election by the board did not in fact vote, the challenge to their eligibility to vote was moot and in no way affected the result. The error claimed by the plaintiff in the decision of the board rejecting the ballot cast by Morris Zatkins, the tailor, is not supported by the record. The ballot of Zatkins, which is made a part of the record, indicates that he had marked an "X" in the "NO" square, but had also inserted the figure "72" in the "YES" square. The board's policy is to reject ballots upon which a mark appears which appears to have been deliberately made or which may serve to identify the voter. The board, in the exercise of the wide discretionary powers conferred upon it by § 31-106, requiring the election to be conducted by secret bal-

lot, could adopt a rigid policy or practice, regarding as void all marked ballots which, in its judgment, could identify the owner and voter. *National Labor Relations Board* v. *Whitinsville Spinning Ring Co.,* 199 F.2d 585; *National Labor Relations Board* v. *National Truck Rental Co.,* 239 F.2d 422, 426, cert. denied, 352 U.S. 1016. It cannot be said that the board abused its discretion in voiding this ballot, especially since the instructions upon the ballot clearly indicated that the mark was to be in one square only. The figure "72" may either be the clock number or the age of the voter, but it was a question for the board's determination as to whether this was a deliberate marking of the ballot to indicate the voter. See 73 Stat. 521, 29 U.S.C. § 402 (k).

The plaintiff claims that the board erred in its decision on the results of the voting on the ground that the number of votes (four) counted in the final tabulation of the ballots in favor of the union was not a majority of the votes cast (ten) or the number counted (eight). The record of the board certified to the court shows that at the election conducted by the board on July 7, 1959, ten ballots were cast and counted; of these, three votes were in favor of the union, two votes not in favor of the union, and five votes were challenged. Of the eleven persons certified as eligible to vote, only eight voted. Malvale Evans, James Holley, Ophelia Watkins, though certified as eligible to vote, did not vote. The other two votes cast and counted were those of Dorothy Galumbowski and Anthony Vitulano, employees of the plaintiff who were not certified as eligible to vote. The union challenged the ballots of John F. Dale, Jr., and Morris Zatkins, both certified as eligible to vote, and the ballots of Dorothy Galumbowski and Anthony Vitulano, the shoe repairman, neither of whom were certified as eligible to vote. The plaintiff challenged the ballot of Leonard Dyer, whom

he claimed to have discharged for cause before the strike began, but whom the board found was discharged for union activity prior to the election and therefore entitled to vote. Of the five ballots thus challenged, the board counted only the ballots of John Dale, Jr., and Leonard Dyer. The ballots of Dorothy Galumbowski and Anthony Vitulano were not counted, as indicated previously. The ballot of Morris Zatkins was declared void because of an identifying marking. Thus only seven valid ballots were counted, and the union had a majority of four to three of such ballots. A majority of the votes cast in an election is sufficient for a choice of a bargaining representative under the National Labor Relations Act. *National Labor Relations Board* v. *Deutch Co.,* 265 F.2d 473, 479. There is no reason why the rule under our own statute should be otherwise. A void ballot cannot be counted in determining the existence of a majority.

The plaintiff in his brief did not challenge 1 (a), 1 (b), and 1 (c) of the order of the board. There was substantial evidence to support this portion of the order in view of the plaintiff's conduct involving not only Dyer but Ophelia Williams. The violations restrained bore a definite resemblance to those committed or to be anticipated from plaintiff's past conduct. *Bausch & Lomb Optical Co.* v. *National Labor Relations Board,* 217 F.2d 575; *National Labor Relations Board* v. *United Mine Workers of America,* 195 F.2d 961.

With respect to the error claimed as to the order of the board requiring the rehiring of Leonard W. Dyer, based upon its finding that the plaintiff had engaged in an unfair labor practice in discharging Leonard W. Dyer, the record contains substantial evidence from which the board could reasonably find that the reason for his discharge was his union activities and therefore his discharge constituted an

unfair labor practice in violation of § 31-107 (c) of the General Statutes. Where the ultimate findings of the board are supported by substantial evidence, its conclusion must stand. *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations,* 142 Conn. 457, 461. A court on review cannot substitute its judgment for that of the board on disputed facts where the board's finding is supported by substantial evidence, even though the court might reach a different conclusion on the conflicting evidence. The credibility of witnesses, the weight to be given to the testimony and the determination of conflicting evidence were matters for the board and not the court. *Continental Oil Co.* v. *National Labor Relations Board,* 113 F.2d 473; see also *National Labor Relations Board* v. *Reed & Prince Mfg. Co.,* 118 F.2d 874, 879-880; *Superior Engraving Co.* v. *National Labor Relations Board,* 183 F.2d 783; *Motors, Inc.* v. *Connecticut State Board of Labor Relations,* 19 Conn. Sup. 280; *Purity Food Co.* v. *Connecticut State Board of Labor Relations,* 17 Conn. Sup. 199.

Dyer's ballot was properly counted, since the evidence warranted the board in finding that he had been discharged for union activity and thus ousted from his job by an unfair labor practice. He remained an employee for the purpose of determining majority representation and was eligible to vote in the election of July 7. *National Labor Relations Board* v. *Sifers,* 171 F.2d 63.

Judgment may enter dismissing the appeal.