BASILISO CORREA TORRES, Plaintiff and Appellee, *v.* SOCIEDAD MARIO MERCADO E HIJOS, Defendant and Appellant.

No. 10294. Argued December 1, 1950.—Decided January 31, 1951.

*Pedro M. Porrata* and *Charles Cuprill* for appellant. *Frank Torres* for appellee.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

Basiliso Correa Torres sued the *sociedad* Mario Mercado e Hijos for the wages corresponding to the extra hours which he worked as majordomo in defendant's properties during the period between November 7, 1935 and April 30, 1949.

As grounds for his claim he alleged that during said period he worked 14 hours daily including Sundays; that from November 7, 1935 until January 2, 1941 his salary

amounted to $9 weekly; from January 3, 1941 until December 29, 1943, to $12 weekly; and from December 30, 1943 until April 30, 1949, to $14 weekly.

After a trial on the merits the court *a quo* found that during the entire period that the plaintiff was defendant's employee, namely, from November 7, 1935[1] until April 30, 1949, the plaintiff worked seven days a week at the rate of 10 hours daily; that from November 7, 1935 until April 28, 1943, on which date Mandatory Decree No. 3 of the Puerto Rico Minimum Wage Board took effect, the plaintiff, pursuant to the decision in *Cardona* v. *District Court*, 62 P.R.R. 59, was entitled to the balance of his wages corresponding to the ninth hour worked daily, for which reason it awarded him until April 28, 1943 a total sum of $388.83; for the period between April 29, 1943 until April 30, 1949, applying Mandatory Decree No. 3 of the Minimum Wage Board, it awarded him $2,106.20 for all the extra hours at double rate, taking into account the two wage rates of $12 and $14 per week, respectively, that he received during said period. And from April 9, 1946, the effective date of Act No. 289 of 1946 (Sess. Laws, p. 682), which grants a day of rest for every six working days, and which also provides that in case work is done on the day of rest such day shall be paid at double the salary, it awarded him $316, entering judgment for the plaintiff in the total amount of $2,667.38[2], plus costs and $300 as attorney's fees. The defendant appealed from said judgment.

 There is no conflict in regard to the allegation that plaintiff was employed by the defendant from November 7, 1935 until April 30, 1949; there is no conflict either as to the $9, $12, and $14 weekly wages respectively

---

[1] For the purposes of this case November 7, 1935 is considered as the date on which appellee began to work because Act No. 49 of 1935 became effective on that date.

[2] The total sum of the items awarded is $2,811.03 and not $2,667.38 as appears from the judgment.

on the dates alleged by the appellee. But the evidence was conflicting as to the number of hours worked daily and in regard to the fact that during the entire period that he was employed with the defendant, the plaintiff worked the seven days of every week. Nevertheless, an examination of the evidence shows that there was proof tending to support the finding of the lower court regarding these two points, and it not having been shown that in such weighing of the evidence the court was moved by passion, prejudice or partiality or committed manifest error, we do not disturb the discretion of the court *a quo*. And with respect to the type of work he did during the entire period of his employment with the appellant, the court arrived at the following conclusions: that the appellee had under his orders from 12 to 14 men, who were engaged in agricultural work; that he supervised and gave instructions to those laborers, and could hire and fire them, but therefor he had to receive orders [3] from Antonio Rullán, Chief of Zone of the appellant; having besides to oversee the property daily. There is no conflict in connection with the steps above listed.

Based on these facts the court *a quo*, in determining the compensation corresponding to the appellee from November 7, 1935 until April 28, 1943, applied § 1 of Act No. 49 of 1935 (Spec. Sess. Laws, p. 538) [4] as construed in *Cardona* v. *District Court, supra*, that is, that the appellee was entitled to receive the remainder of the wage corresponding to the ninth hour worked at single rate, since his weekly salary

---

[3] It seems desirable to make clear that according to the evidence the orders which the plaintiff had to receive from Rullán were either to do or to discontinue certain work. When pursuant to Rullán's orders certain work was to be begun, the plaintiff had full authority to select and hire personnel and he had the same discretion to fire laborers when certain work was to be discontinued.

[4] Section 1 provides in part as follows:

"No person shall be employed or shall be permitted to work in any commercial, industrial, or agricultural establishment or in any other lucrative business more than eight (8) hours during any natural day. . ."

pursuant to his contract with the employer included all the hours worked during the day at single rate.

In thus applying the Act, the court *a quo* acted correctly since pursuant thereto its provisions are applicable *to all persons working in any lucrative business.* So that regardless of the type of work he did for his employer, the appellee was entitled to compensation for the ninth hours worked during this period.

■ It is true that § 4 of Act No. 49 of 1935 in defining the word "employer," states that it "includes every natural or artificial person and the manager, superintendent, foreman, majordomo, or representative of said natural or artificial person"; but as we said in *Tulier* v. *Land Authority*, 70 P.R.R. 249, 255, citing from *American Steel Foundries* v. *National Labor Rel. Bld.*, 158 F. 2d 896, 898 (C. A. 7, 1946), the inclusion of the words "majordomo" and "foreman," "means only that the consequences of his acts may be visited upon his employer, and in that sense only does such worker occupy an employer status."

■■ With respect to the period between April 29, 1943 when Mandatory Decree No. 3 of the Minimum Wage Board became effective, and April 30, 1949 when the contract of work terminated, it awarded him all the extra hours at double rate, on the ground that the work done by the appellee was that of a majordomo and that the same was included within the provisions of the aforesaid Mandatory Decree.

In connection with minimum wages in the agricultural phase, the Decree prescribes:

"1. MINIMUM WAGES:- Every employer who employs workers in the agricultural phase of the Sugar Industry shall pay said workers, for the different occupations or types of work detailed below, at least, at the following wage rates for the first eight (8) hours of work in any twenty-four (24) hour period, with the exception of those who work as ditch-diggers, ditch-cleaners, ditchloppers and cleaners who work with

'machetes,' and axmen cleaning ties in the water and irrigators in non-gravity irrigation systems when working in the water, to whom the minimum daily wage rate applicable shall be for the first seven (7) hours of work during any twenty-four (24) hour period:

| "Occupation | "Rates for other than small and interior farms | Rates for small and interior farms |
|---|---|---|
| "(a) All kinds of work except as classified below | $1.50 | $1.40 |
| "(b) Ditch-diggers; ditch-cleaners; axmen in ditches; ditch-loppers; irrigators in non-gravity irrigation systems when working in the water or in swampy lands; operators of irrigation pumps. | 1.70 | 1.55 |
| "(c) Cane cutters; crane operators; dumpers; plow-steermen; and the cane-cart loaders. | 1.80 | 1.65 |
| "(d) Cartmen in harvest work; portable track handlers; car loaders; and car conductors. | 1.90 | 1.75 |
| "(e) Tractor operators. | 2.20 | 2.05 |
| "(f) Helpers of: carpenters; masons; mechanics; painters; electricians and other manual arts and trades skilled workers. | 2.40 | 2.20 |
| "(g) Carpenters; masons; mechanics; painters; electricians, and other manual arts and trades skilled workers. | 3.25 | 3.00 |

". . . . . . . . . .

"4. HOURS OF WORK:-

"(a) *Maximum hours of work per day.*

"No employer shall employ any worker in the agricultural phase of the Sugar Industry for over eight (8) hours in any twenty-four (24) hour period unless such worker receives compensation for his work in excess of said eight (8) hours, at a rate twice the minimum wage applicable in accordance with the scale established in Section A-1 of this decree; . . ."

In view of the type of work done by the appellee we must conclude, as the court *a quo* did, that appellee was a majordomo. This issue being thus joined the question to be decided boils down to determining whether the lower court erred in deciding that as such majordomo the appellee is comprised within the provisions of the Decree. It will be enough to examine the foregoing provisions of the Decree to conclude that he is not. This is so because the different types of work involved in the Decree are specifically listed therein, a minimum wage being fixed for each occupation, and the work performed by majordomos is not among them. The court *a quo*, however, concluded that the Decree is applicable to majordomos because it deemed that they are included in that part thereof which recites: "All kinds of work except as classified below . . . $1.50."

But we believe that the Minimum Wage Board did not intend to include majordomos in this general clause, simply because despite the relative importance of the work they perform it would be fixing for majordomos a minimum wage lower than for the laborers who work under their orders, especially for the ditch-diggers, ditch-cleaners, etc., whose minimum wage was fixed at $1.70.

Thus, the lower court erred in applying to this period the provisions of the Decree which order the employer to pay at double rate all the hours worked daily in excess of eight.

Since the Mandatory Decree is not applicable, this period, up to May 15, 1948, must be regulated by the provisions of Act No. 49 of August 7, 1935, as construed in *Cardona* v.

*District Court, supra.* This is so because Act No. 379 of May 15, 1948 repealed Act. No. 49 of August 7, 1935.

■■ We shall now consider whether under Act No. 379 of May 15, 1948 the appellee being, as he was, a majordomo, is entitled to receive compensation at double rate for the time worked in excess of the eight hours per day and 48 hours per week. This Act in defining the word employee[5] expressly provides that it shall not include executives, administrators, or professionals. It is obvious that the appellee can not be characterized as an administrator, let alone a professional. Consequently, the question to be decided is merely whether the appellee was an executive. As found by the court he was empowered to hire and fire laborers; he had a group of laborers under his orders, supervised and directed the works and inspected the farm. Such powers, in our judgment place him under the classification of an executive.[6] *Ralph Knight* v. *Mantel*, 135 F. 2d 514, 517 (C. A. 8, 1943); *Marshall-Wells Co.* v. *Haw-*

---

[5] Act No. 379 of 1948 insofar as pertinent provides:

"Section 19.—The following definitions of words and phrases in this Act shall be accepted, unless it is otherwise deduced from the context hereof;

" 'Employee' includes every employee, workman, day laborer, artisan, laborer, clerk, shop clerk, and every person employed for wages, salary, day wages, or any other form of compensation in any occupation, establishment, business, or industry, excepting travelling agents and peddlers. The word 'employee' shall not include executives, administrators, or professionals."

[6] In connection with the type of work done by the plaintiff it is very significant that while he worked with the defendant he did not belong to any union, as well as the additional circumstance that when he quit working he made it known by means of a letter dated March 14, 1949 (Defendant's exhibit A) which in so far as pertinent reads:

"As you must know I have been rendering my humble services to the firm which you so ably preside, for over 30 years, the majority of which, from 23 to 24 years, I have been working *as Majordomo in Charge* of the colonia Buena Vista . . .

" . . . . . . . . . . . . .

"I should appreciate it if you pensioned me for physical incapacity beginning at the end of the coming month of April of this year. . ." (Italics ours.)

*ley*, 53 F. Supp. 295 (D. C. Minn., 1942; *cf. Tulier* v. *Land Authority, supra; Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250, 256. Since the appellee is an executive he is not entitled to compensation at double rate for the hours worked in excess of eight hours daily and 48 hours weekly.

█ It remains to be decided whether the lower court erred in granting compensation to the appellee at double rate for the day of rest provided by Act No. 289 of April 9, 1946.[7] It clearly appears from the text of this Act that its provisions as well as those of Act No. 49 of 1935 are applicable to all employees for in defining the word employee[8] for the purposes of the Act, it makes no exclusion whatsoever unlike Act No. 379 of 1948 before mentioned. Hence the court did not err in applying to the present case the provisions of Act No. 289 of 1946.

Pursuant to the principles set forth in this opinion the appellee is entitled to be paid at single rate for the remainder of the ninth hour from November 7, 1935 until May 15, 1948, that is, $747.98; and from April 9, 1946 until April 30, 1949 he is entitled to compensation for the 159 days of rest worked during that period, that is, $318.[9]

---

[7] Section 1 of Act No. 289 of 1946 provides:

"All employees of any commercial or industrial establishment, enterprise, or lucrative business not subject to the provisions of Section 553 of the Penal Code of Puerto Rico, as subsequently amended, relative to .the closing to the public, shall be entitled to one day of rest for every six (6) working days.

"For the purposes of this Act, one day of rest shall be understood as a period of twenty-four (24) consecutive hours."

[8] Section 5 of Act No. 289 of 1946 provides:

"For the purposes of this Act, employee shall be understood to mean any employee, laborer, clerk, workman, day laborer or person who works for an employer for a salary, wage, or any other compensation."

[9] The appellee worked 159 weeks of seven days from the effective date of Act No. 289 of April 9, 1946 until he ceased in his· employment on April 30, 1949. During that· time he received a $14 weekly salary, that is $2 daily. But since he worked the days of rest and the aforesaid Act No. 289 provides that if work is done on such days the same must be paid at double rate, the appellee was only entitled to the remainder of the double compensation, that is, $2 for each day of rest on which he worked.

The judgment will be modified by reducing the total compensation to $1,065.98, and by eliminating costs [10] and as modified, it will be affirmed.

Mr. Justice Negrón Fernández took no part in the consideration or decision of this case.

---

[10] Pursuant to § 14 of Act No. 10 of November 14, 1917, (Spec. Sess. Laws, p. 216) costs shall not accrue in this class of suits.