## NATIONAL LABOR RELATIONS BOARD v. DELAWARE–NEW JERSEY FERRY CO.

### No. 7850.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 2, 1941.

Decided April 29, 1942.

---

132

David Findling, of Washington, D. C. (Robert B. Watts, Gen. Counsel, Laurence A. Knapp, Associate Gen. Counsel, Ernest A. Gross, Asst. Gen. Counsel, and William Strong, Atty., National Labor Relations Board, and Ida Klaus, all of Washington, D. C., on the brief), for petitioner.

Otto Wolff, Jr., of Philadelphia, Pa. (Lewis, Wolff & Gourlay, of Philadelphia, Pa., on the brief), for respondent.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

On March 31, 1941, the National Labor Relations Board entered its order pursuant to Section 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 160(c), requiring the respondent, Delaware-New Jersey Ferry Company to cease and desist from dominating or interfering with the formation or administration of the Engineers and Engine Committee (the Engine Committee) and Captains and Deck Hands Committee (the Deck Committee), from contributing to the support of these committees, from giving effect to any agreement made by it with these committees (without prejudice, however, to any rights or benefits conferred upon individual employees under the contracts), from refusing to bargain collectively with United Marine Division, Local No. 333, affiliated with the American Federation of Labor and the International Longshoremen's Association, as the exclusive representative of the captains, mates, engineers, deck hands, oilers, firemen, bridgemen and watchmen of the New Castle-Pennsville line operated by the respondent between New Castle, Delaware, and Pennsville, New Jersey, in respect to rates of pay, wages, hours of employment, and other conditions of employment, and from in any other manner interfering with or coercing its employees in the exercise of their right of self-organization for the purpose of engaging in concerted activities in respect to collective bargaining, as provided by Section 7 of the Act, 29 U.S.C.A. § 157.

The Board's order also requires the respondent, by way of affirmative action, to withdraw all recognition from the Engine Committee and the Deck Committee as the representatives of any of its employees for the purpose of dealing with the respondent concerning grievances, labor disputes, rates of pay, and other conditions of employment and to disestablish these committees; also upon request to bargain collectively with United Marine Division, Local No. 333, as the exclusive representative of the employees heretofore named of the New Castle-Pennsville line; upon application to offer to the employees who struck on July 15, 1940, and who have not been already reinstated, immediate and full reinstatement to their former or substantially equivalent positions without prejudice to their seniority and other rights and privileges in the manner provided in the board's opinion; to make whole those employees for any loss of pay which they might suffer by reason of the respondent's refusal to reinstate them or to place them on a preferential list by paying to each of them a sum of money equal to that which each would have earned according to a formula prescribed by the Board and to post the usual notices to the effect that the respondent would no longer engage in the unfair labor practices prohibited by the Board's order. The case comes before this court upon a petition of the Board seeking to enforce the order referred to.

■ The respondent is a Delaware corporation, having its principal office and place of business in Wilmington, Delaware. This court has jurisdiction of the cause by virtue of the provisions of Section 10(e) of the Act, 29 U.S.C.A. § 160(e). The respondent operates ferry services on two routes between Delaware and New Jersey. One route, as we have indicated heretofore, is between New Castle, Delaware, and Pennsville, New Jersey. The other route is between the Marine Terminal at Wilmington, Delaware, and Pennsgrove, New Jersey. In the year 1939 nearly 3,000,000 persons and more than 1,250,000 vehicles were trans-

ported upon the two lines between Delaware and New Jersey. There is no doubt that the operations of the respondent were in interstate commerce and that the occurrence of the strike referred to did affect commerce within the meaning of Section 10(a) of the National Labor Relations Act, 29 U.S.C.A. § 160(a). These operations of the respondent in fact constitute a not unsubstantial part of the commerce between the two states.

The complaint charged that the respondent had dominated and interfered with both the formation and administration of the Engine Committee and the Deck Committee. Specifically the complaint charges and the Board found that the respondent had contributed to the support of the Engine Committee and of the Deck Committee in violation of Section 8(2) of the Act, 29 U.S. C.A. § 158(2), had refused to bargain collectively with Local No. 333 of the United Marine Division in violation of Section 8 (5), 29 U.S.C.A. § 158(5), and by threats and warnings and by contracts entered into by it with the Engine Committee and the Deck Committee had interfered with and coerced its employees in the exercise of the rights guaranteed to them by Section 7, 29 U.S.C.A. § 157, in violation of Section 8(1) of the Act, 29 U.S.C.A. § 158(1).

The Board held extended hearings and found as a fact that the charges specified by the complaint were supported by the evidence adduced. We have examined carefully the transcript of the proceedings before the Board filed in this court. We conclude that there would be small point in a reiteration of the testimony. The evidence supports very fully the Board's conclusions as to the unfair labor practices of the respondent as charged in the complaint. Section 10(e) of the Act, 29 U.S.C.A. § 160(e), provides that the findings of the Board upon questions of fact, if supported by evidence, shall be conclusive. The decisions which hold that this section means what it says are so numerous as to provide little point in citing them. We think that it is of more importance to deal with other points specifically raised by the respondent in opposition to the enforcement of the Board's order.

█ The respondent contends that the charge of the complaint that the respondent was guilty of unfair labor practices within the meaning of Section 8(2) of the Act, 29 U.S.C.A. § 158(2), in that it dominated both the Engine Committee and Deck Committee is already res adjudicata and was disposed of in the respondent's favor by reason of the decision of this court at No. 6132, National Labor Relations Board v. Delaware-New Jersey Ferry Co., 3 Cir., 90 F.2d 520, certiorari denied 302 U.S. 738, 58 S.Ct. 141, 82 L. Ed. 571. A very brief resume of the facts of the case which was then before this court will demonstrate the error of the respondent's contention.

The complaint in the case cited was filed in October, 1935. The respondent then employed twelve licensed engineers. These engineers and the respondent got into a dispute regarding wages and hours of labor and the engineers authorized Marine Engineers' Beneficial Association, No. 13, (M. E.B.A.) to bargain collectively with the respondent on their behalf. The respondent refused to bargain and charges were filed with the Board. The Board issued its complaint and, after hearing, found that the respondent by reason of this refusal had engaged in an unfair labor practice affecting commerce within the meaning of Section 8(5) and Section 2(6) and (7) of the Act, 29 U.S.C.A. §§ 158(5), 152(6) and (7), and entered an appropriate order to compel the respondent to cease and desist from this practice.

In April, 1936, the Board filed a petition in this court seeking to have us enforce the order referred to. In October, 1936 the respondent filed its own petition stating that after the decision and order of the Board, the engineers had created a new negotiating committee and that this committee had negotiated a contract on behalf of the twelve engineers with the respondent which had been executed by them. The Ferry Company took the position before this court at No. 6132 that since each of the engineers had entered into a contract with the respondent allegedly terminating the difficulties between them, the questions raised by the Board's petition to enforce had become moot. This court agreed with this contention and accordingly the petition was dismissed.

It will be observed that our decision dealt only with the licensed engineers and had nothing to do with any other employees of the respondent. The complaint in the case now at bar was filed in September, 1940. It charges unfair labor practices to the Ferry Company in that it formed and dominated the Engine and Deck Committees and refused to bargain collectively with United

Marine Division, Local No. 333, allegedly in derogation of the rights guaranteed to the respondent's employees by Section 7 of the Act, 29 U.S.C.A. § 157, in violation of Sections 8(1), (2) and (5), 29 U.S.C.A. § 158 (1), (2) and (5) The Board in its decision based upon the complaint filed in October, 1935 found that the Ferry Company had been guilty of unfair labor practice in refusing to bargain with the M.E.B.A. in violation of Section 8(5), 29 U.S.C.A. § 158(5). The only similarity between the old complaint (that which was before this court as part of the record at No. 6132) and the new complaint, upon which the Board's present order is based, is that both allege violation of the same sections of the National Labor Relations Act, viz., Section 8(5), 29 U.S. C.A. § 158(5), and Section 2, subsections (6 and 7), 29 U.S.C.A. § 152(6) and (7).

While the testimony introduced before the Board in the previous proceedings was made part of the record in this cause, additional evidence was adduced before the Board in the case at bar. In the instant case neither the Board nor the respondent was concerned directly with the M.E.B.A. The status of neither the Engine Committee nor the Deck Committee was the subject of any order or adjudication by the Board or by this court in the original proceeding and, at the time of the hearings before the Board upon the original complaint, United Marine Division, Local No. 333, had not entered the picture. We must conclude that the claim that the issues presented by the petition at bar are res adjudicata by reason of the previous decision of this court at No. 6132 cannot be sustained. That this conclusion is correct is made all the more apparent by the fact that this court in its previous decision did not pass upon any of the issues presented by the Board's petition then pending but declared simply the questions raised by it were moot.

█ The respondent also contends that the proceedings before the Board constituted a mistrial because the Trial Examiner declined to issue a subpoena for Bennett F. Schauffler, the Board's Regional Director in the Philadelphia area. The Ferry Company takes the position that it was not required to comply with the Board's Rules and Regulations (See Article II, Section 21) in respect to subpoenas which require that the applicant for a subpoena shall specify the name of the witness, and the nature of the facts to be proved. The respondent concedes that it did not comply with this rule,

but contended before the Board and contends now that it was entitled to the subpoena as a matter "of right". In support of its position the Ferry Company cites the decisions of Inland Steel Company v. National Labor Relations Board, 7 Cir., 109 F. 2d 9, and North.Whittier Heights Citrus Association v. National Labor Relations Board, 9 Cir., 109 F.2d 76. The respondent, however, admits in its answer that it refused to bargain with the Local on the dates set forth in the complaint. Under these circumstances we cannot conclude that in refusing to issue the subpoena to require the presence of Bennett F. Schauffler, the Trial Examiner committed such error as would vitiate the proceedings before the Board.

█ As to the refusal of the Trial Examiner to issue a subpoena duces tecum upon the request of the respondent to the president and secretary of the Union and to the secretary of its executive board to require them to produce any and all resolutions of its executive board providing for an increase in initiation fees or dues to the end that the respondent might endeavor to impeach collaterally the testimony of Captain Bradley, it appears clearly that the question with which the Board was concerned was one of membership by the respondent's employees in the Local. It has been held repeatedly that an application for membership in the form of a signed membership card, is a sufficient indication by the individual employee of a desire to join a union and constitutes membership therein. See National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 339, 340, 60 S.Ct. 918, 84 L.Ed. 1226; National Labor Relations Board v. Chicago Apparatus Co., 7 Cir., 116 F.2d 753, 755, 756; National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 111 F.2d 681, 687. It follows therefore that whether or not the Local had acted formally upon the applications for memberships signed by the respondent's employees is immaterial. We conclude that under the circumstances the refusal of the Trial Examiner to grant the subpoenas requested did not prejudice the respondent.

█ The next three points raised by the Ferry Company have one fundamental question in common, namely, the propriety of the designation of the bargaining unit by the Board for the purposes of collective bargaining. The respondent takes the position that the determination by the Board of the bargaining unit was contrary to the

provisions of Sections 9(b) and (c), 29 U. S.C.A. § 159(b) and (c), and to those of the Board's own regulations (Sections 1, 3 and 10 of Article III, Rules and Regulations, Series 2 as amended.) To sum up this contention of the respondent we state that the Ferry Company lays emphasis upon the provisions of Section 3, Article III of the Board's Rules and Regulations,[1] taking the position that since two or more labor organizations had not presented conflicting claims to it asserting that each represented a majority of the employees in the appropriate bargaining unit, the Ferry Company was not in a position to compel the Board to designate an appropriate unit, the Board in the original proceeding having required the respondent to deal only with the M. E. B. A. It follows, says the Ferry Company, that the Board is bound by its decision designating the M. E. B.A. as the appropriate bargaining unit, and cannot modify its decision, at least until it informs the respondent of that modification. This is a curious argument when we consider it in the light of the Ferry Company's attitude toward the prior order of the Board. As will appear from an examination of the record at No. 6132, the respondent refused at all times to bargain with M. E. B. A. as ordered by the Board and after the Board's order and without any modification of it by the Board, the respondent bargained without hesitation with a committee consisting of the three licensed engineers. When the Board sought to have its order requiring the respondent to bargain with the M. E. B. A. enforced by this court, the respondent took the position that any question of qualification of the bargaining agency was moot. Finally the respondent bargained with two company-dominated committees, the Engine Committee and Deck Committee. For the respondent now to take the position that it could not have bargained with Local 333 because of the order of the Board in the previous case, constitutes an unimpressive argument.

The next point raised by the respondent is that the Board's present determination of Local 333 as an appropriate bargaining unit should be set aside by this court as not being a proper exercise of the Board's discretion. Assuming that the unit is an appropriate unit despite the fact that it includes captains, mates, and licensed engineers, as well as unlicensed personnel, we conclude that there is no doubt that Local 333 did in fact represent a majority of the employees included in the unit. This is a matter of simple arithmetic. But the appropriateness of the unit does raise a serious question. Licensed deck officers and licensed engineers are included in the same unit as the unlicensed personnel. There are in fact sixty-eight unlicensed hands and thirty-eight licensed officers included in the unit as now constituted. Of the sixty-eight unlicensed employees, seventeen were seasonal employees who worked for only four or five months a year. If we subtract these from the sixty-eight we see that there are only fifty-one unlicensed hands who serve the Ferry Company throughout the year in a unit which contains thirty-eight licensed employees. Supervisory employees rarely should be included in the same bargaining unit as workmen. In its earlier decision the Board found that sharp distinctions existed between the three classes of personnel, pilots, engineers and crew, and found that the licensed engineers as a group were an appropriate bargaining unit, properly represented by the M. E. B. A. In its previous decision the Board stated, "It is clear that, so far as the pilots and engineers are concerned, such wide differences in authority, experience, responsibility and duty prevail, that a separation of engineers from the pilots for the purpose of collective bargaining is warranted, and the same is true, for like reasons, of a separation of the engineers from the quartermaster and deck hands." The respondent takes a strong position on this question in its brief and

---

[1] Section 3, Article III, Rules and Regulations of the Board, Series 2 as amended, provides in part: "If it appears to the Board that an investigation should be instituted it shall so direct and (except as provided in Section 10 of this Article) shall authorize the Regional Director to undertake such investigation and to provide for an appropriate hearing upon due notice, either in conjunction with a proceeding instituted pursuant to

Section 5 of Article II of these Rules and Regulations, or otherwise, provided that the Board shall not direct an investigation on a petition filed by an employer unless it appears to the Board that two or more labor organizations have presented to the employer conflicting claims that each represents a majority of the employees in the bargaining unit or units claimed to be appropriate * * *."

136

states that "From time immemorial, and for the very purpose of maintaining *discipline and obedience to authority, a sharp line of demarcation* has existed between the officers and the crew of a vessel, and the most ordinary considerations of safety make it imperative that it be so. All this, however, the Board would destroy by including the officers of a vessel in a bargaining unit in which they are greatly outnumbered by the crew *which is subject to their orders.*" It is interesting to note, however, that the respondent had no hesitancy itself in including licensed personnel and unlicensed hands in the same units, viz., the Engine Committee and the Dock Committee and the respondent apparently did not consider that it was endangering thereby discipline and safety on the Delaware River to which it alludes so strongly on its brief.

We must point out, however, that the Board included in the bargaining unit of which it approves only the employees on the New Castle-Pennsville line and excluded the employees on the Wilmington-Pennsgrove route, that it also excluded ticket collectors and standmen from the unit, but included bridgemen and watchmen therein. Bridgemen are employees who lower the bridge or draw, from the pier to the deck of the boat in order to accommodate the loading and unloading of passengers and freight. Standmen are employees who have charge of the soft-drink and sandwich stands on board the respondent's boats. Watchmen watch the ferry offices, collectors' booths and the wharf properties and look out for accidents. The respondent would exclude bridgemen and watchmen from the bargaining unit unless ticket collectors and standmen are included. The Board found as a fact that the New Castle-Pennsville line and the Wilmington-Pennsgrove route are operated with identical personnel policies and under the same wage-rates, and that common relief crews are used for both lines, employees being

shifted from one to the other in cases of emergency. The Board takes the position that the employees of both lines should not be included in one bargaining unit. The Board said, "These two lines are sufficiently distinct so that they can operate as separate units. And under such circumstances, the Board has repeatedly restricted the unit to the organized divisions or plants of one company, permitting the inclusion of additional divisions or plants as organization progresses.", citing Matter of Burroughs Adding Machine and Boston Lodge, No. 264, International Association of Machinists, American Federation of Labor, 14 N. L.R.B. 329, and other cases.

In International Association of Machinists v. National Labor Relations Board, 71 App.D.C. 175, 110 F.2d 29, 46, the Court of Appeals for the District of Columbia makes plain that the decision as to what is an appropriate bargaining unit under the circumstances is a delicate one which has been delegated by Congress to the Board. See Section 9(a) and (b) of the Act, 29 U. S.C.A. § 159 (a) and (b).[2] The decision cited was affirmed by the Supreme Court, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50. In Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 152, 61 S.Ct. 908, 912, 85 L.Ed. 1251, the Supreme Court by Mr. Justice Reed stated: "The Labor Act places upon the Board the responsibility of determining the appropriate group of employees for the bargaining unit. In accordance with this delegation of authority, the Board may decide that all employees of a single employer form the most suitable unit for the selection of collective bargaining representatives, or the Board may decide that the workers in any craft or plant or subdivision thereof are more appropriate."

The selection of the bargaining unit is a matter for the specialized experience and expert knowledge of the Board and its decision in the administrative field

2 "Sec. 9 (a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer.

"(b) The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act [sections 151–166 of this title], the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof."

is entitled to great weight, but in the case at bar the unit approved by the Board is one in which the licensed personnel is in the minority of all-year-round employees and an overwhelming minority when seasonal employees are added to the unit. The inclusion of supervisory employees in a bargaining unit of any kind is unusual. The courts almost invariably have held the employer responsible for acts which constitute unfair labor practices when committed by supervisory employees of no higher grades than foremen or assistant foremen. The duty of obedience owed by a deckhand to obey the orders of a licensed ship's officer is greater than that of a worker at a bench in a factory to obey the direction of his foreman. If the latter refused obedience he would be insubordinate, but if the sailor refused obedience he would be mutinous if his act occurred upon waters within the admiralty jurisdiction of the United States. Southern Steamship Company v. National Labor Relations Board and National Maritime Union of America, 62 S.Ct. 886, 86 L.Ed. ——. The waters of the Delaware River upon which the respondent operates its ferries are within the Federal admiralty jurisdiction.

The history of maritime employment shows the importance of the obedience of the sailor to his officers. This is necessary to maintain the safety of the ship, the cargo and the passengers, and it is true of a ferry boat though individual voyages are shorter. To group officers in command with employees who owe the duty to obey the commands in one bargaining unit seems to us to be dangerous.

It is true that few, if any, of the licensed officers object to being included in a bargaining unit with the unlicensed personnel.[3] This is not a controlling factor although it is one which we have considered. But the point here is not what the officers want, nor what the men want, nor what the company either wants or is willing to acquiesce in, but rather, what is the public interest. The Board's duty to serve the public interest cannot be affected by the desires or acquiescence of the parties. Granting that the determination of the appropriate bargaining unit is primarily a matter for the Board and that courts should be exceedingly careful to refrain from substituting their judgment for that of a duly constituted administrative body, none the less it seems to a majority of the court that in the case at bar the limits of the administrative discretion of the Board have been exceeded, and that the court should not grant an enforcement order based upon the bargaining unit as now constituted.

The history of the selection of bargaining units by the Board itself seems to the majority to lend support to the view just expressed. In numerous instances involving marine employment different types of licensed employees have been recognized as appropriately placed in separate bargaining units on grounds similar to those just quoted.[4] Indeed only one case has been found where unlicensed personnel was included in a bargaining unit with licensed personnel. In this case the unlicensed employees were "junior engineers" and the group was otherwise homogeneous. Even there, the Board included the unlicensed men admittedly "having experienced some hesitancy." In re Grace Line, Inc., 2 N.L.R.B. 369, 374 (1936).

The writer of this opinion, however, must dissent from the majority view as to the appropriate bargaining unit. If authority for the selection of the unit were vested by the Act in this court, I would be of the opinion that the inclusion of licensed and unlicensed personnel in the same unit was unwise and should be rejected. But the matter is one for the expert administrative discretion of the Board, though this court may set aside what the Board has done if that discretion was abused. I can see no

---

[3] Of the entire licensed personnel of the respondent only two, so far as the record shows, objected to being represented by Local No. 333 and none objected because of the inclusion of licensed and unlicensed personnel in the same unit.

[4] In re Panama R. R. Co., 2 N.L.R.B. 290, 294–295 (1936); In re Black Diamond S. S. Corp., 2 N.L.R.B. 241, 244–245 (1936); In re International Mercantile Marine Co., 1 N.L.R.B. 384, 388–390 (1936); In re Delaware-New Jersey Ferry Co., 1 N.L.R.B. 85, 93–94 (1935). The same principle has been constantly applied, without comment, in the following cases: In re Petroleum Navigation Co., 10 N.L.R.B. 1348, 3151 (1939); In re Cities Service Oil Co., 10 N.L.R.B. 954, 956–957 (1939); In re Tide Water Associated Oil Co., 9 N.L.R.B. 823, 827–828 (1938); In re Standard Oil Co. of New Jersey, 8 N.L.R.B. 936, 939–940 (1938); See also In re American-West African Line, Inc., 4 N.L.R.B. 1086, 1091 (1938).

reason in the case at bar for the conclusion that the Board abused its discretion. Certainly there is no evidence of record to indicate that the inclusion of licensed and unlicensed personnel in the same unit would result in labor strife which would affect interstate commerce. This is the ultimate test. I cannot see why this conclusion should be affected by the decision of the Supreme Court in the Southern Steamship Company case, though I concede that if the operation of the unit should result in insubordination among the licensed personnel their conduct would be mutinous if their misconduct occurred on board the respondent's ferries.

The provisions of Sections 1(c) and 2(b) and the provisions of Section 2(e) relating to Sections 1(c) and 2(b) are set aside. As thus modified, the order will be enforced.