## NATIONAL LABOR RELATIONS BOARD v. JONES & LAUGHLIN STEEL CORPORATION.

No. 9730.

Circuit Court of Appeals, Sixth Circuit.

April 4, 1946.

---

Ruth Weyand, of Washington, D. C. (David A. Morse, A. Norman Somers, Ruth Weyand, and Marcel Mallet-Prevost, all of Washington, D. C., on the brief), for petitioner.

John C. Bane, Jr., of Pittsburgh, Pa. (John C. Bane, Jr., and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This is a second hearing of this case, which was instituted by the filing of a petition for enforcement by the National Labor Relations Board. The Board had found the respondent guilty of violating § 8(1) and § 8(5) of the National Labor Relations Act, 29 U.S.C. §§ 151–166, 29 U.S.C.A. §§ 151–166. The unfair labor practice charged and found to exist was that the respondent had refused to bargain collectively with the United Steel Workers of America (C.I.O.), hereinafter called the Union, as representative of its plant guards. Respondent had theretofore bargained collectively with the Union and had signed a contract by which the Union and the respondent agreed in substance that the persons to whom the contract should apply should not include "foremen or assistant foremen * * *, watchmen, salaried employees and nurses." During the life of the contract the Union petitioned the Board for investigation and certification of representatives for the plant guards, that is, for watchmen. The Board held that the patrolmen, watchmen, firemen and dump laborers constituted an appropriate bargaining unit, and held an election in which the votes in favor of the C.I.O. predominated. The Union already represented all of the respondent's production and maintenance employees, and the respondent upon request refused to negotiate with the Union as representative of its plant guards, claiming that they fall within the statutory definition of employer [29 U.S.C. Sec. 152(2), 29 U.S.C.A. § 152 (2)], which includes "any person acting in the interest of an employer, directly or indirectly, * * *" and therefore are not entitled to the rights of employees under 29 U.S.C. Sec. 157, 29 U.S.C.A. § 157, including the right of self-organization and collective bargaining. The respondent also contended that the plant guards, since they were sworn in as members of the military police and were under the control of the United States Army, could not be represented by any union. It therefore refused to bargain with the Union. The Board found that this refusal constituted an unfair labor practice, issued the usual order, and filed a petition for enforcement.

This court, in view of the conceded membership of these men in the military police, denied enforcement of the order. 6 Cir., 146 F.2d 718. The court pointed out that when they were inducted into the unions there involved and became subject to their rules and decisions, the plant guards assumed obligations to the unions and their fellow-workers which might well, in given circumstances, bring them in conflict with their obligation to their employers and their paramount duty as militarized police of the United States Government.

Subsequent to the decree in this court the guards were demilitarized, and this fact was brought to the attention of the Supreme Court on certiorari proceedings filed on behalf of the Board. 325 U. S. 838, 65 S.Ct. 1413. The case was remanded to this court "for further consideration of the alleged changed circumstances with respect to the demilitarization of the employees involved, and the effect thereof on the Board's orders." An extensive stipulation filed upon remand from the Supreme Court also reveals that all the plant guards in question are members of the Cleveland police force.

The respondent contends that under § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), 29 U.S.C.A. § 160(e), no fact not disclosed in the transcript can be regarded by the reviewing court, for the decision on review is required to be made and entered upon the pleadings, testimony and proceedings as set forth in the transcript, and that we therefore can neither consider the fact of demilitarization nor the public police functions exercised by the plant guards.

The Supreme Court, in National Labor Relations Board v. Newport News Ship-

building & Dry Dock Co., 308 U.S. 241, 249, 250, 60 S.Ct. 203, 208, 84 L.Ed. 219, held that the National Labor Relations Act "expressly deprives the reviewing court of power to consider" facts brought to its attention in a brief after hearing. "The case," the Supreme Court declared, "must be heard on the record as certified by the Board. The appropriate procedure to add facts to the record as certified is prescribed in Section 10(e) of the Act."

In any case, it is our duty to comply with the mandate of the Supreme Court. Here the fact of demilitarization after our decree was presented in a petition for certiorari, which perhaps differentiates the case from National Labor Relations Board v. Newport News Shipbuilding & Dry Dock Co., supra. We therefore consider the controversy as if evidence on the question of demilitarization of the plant guards, and also on the facts embodied in the stipulation, had been presented at the hearing before the Board. So considered, we think our original conclusion was correct and adhere to it. The petition for enforcement must be denied.

■ As pointed out in our former opinion, the plant protection employees are employees when considered in their relationship to their employer; but when their relationship to their fellow-employees is examined together with the drastic police powers which they exercise over their fellows, they can hardly be considered in the same category. In their first relationship they are entitled to bargain collectively. The precise question here is not whether the plant guards should be permitted to organize, but whether the peculiar classification into which they fall makes it improper for the Board to permit their organization by the same union which represents the production employees. As revealed by the stipulation, the plant guards, even though their military service has ceased, perform a service which in its public aspect is closely analogous to that of the military police. Under the statutes of Ohio, of which we take judicial notice, the plant guards are peace officers (§ 13432-1, General Code of Ohio), charged on behalf of the public with preventing injury to property, breaches of the peace and criminal offenses, including misdemeanors and felonies. These particular plant guards are also commissioned policemen, the police captain being a deputy sheriff of Cuyahoga County, Ohio, and the other members of the force commissioned, sworn and bonded as private policemen of the City of Cleveland, under § 188 of the Cleveland Municipal Code, 1924. Counsel for the Board admits that the plant guards are part of the municipal police force and have and exercise the legal powers of police officers. During the year 1945 they not only made ordinary investigations of thefts, accidents, etc., on the respondent's premises, but they made arrests for major felonies.

■ With the exception of the police captain, who is a state officer, the plant guards are municipal police. The municipality is an arm of the state, and the state is entitled to rely upon these guards to perform state police duties. In Ohio the policeman of a municipality is held to be a public officer. City of Cleveland v. Luttner, 92 Ohio St. 493, 494, 111 N.E. 280, Ann.Cas.1917D, 1134. The doctrine that the municipality is an agency of the state in matters affecting the public health and safety is enforced in Ohio even as to charter cities, which under the State Constitution have all powers of local self-government. Niehaus v. State ex rel. Board of Education, 111 Ohio St. 47, 144 N.E. 433.

■ It is the usual rule that special policemen are public officers performing public duties. Thornton v. Missouri Pacific R. Co., 42 Mo.App. 58; Dempsey v. New York City & Hudson River Rd. Co., 146 N.Y. 290, 40 N.E. 867; McKain v. Baltimore & Ohio R. Co., 65 W.Va. 233, 64 S.E. 18, 23 L.R.A.,N.S., 289, 131 Am. St.Rep. 964, 17 Ann.Cas. 634; Neallus v. Hutchinson Amusement Co., 126 Me. 469, 139 A. 671, 55 A.L.R. 1191. This is also the law in Ohio. New York, Chicago & St. Louis R. Co. v. Fieback, 87 Ohio St. 254, 100 N.E. 889, 43 L.R.A.,N.S., 1164. The fact that the guards are compensated by a private employer does not detract from the public character of their employment. The cited case held that a railroad policeman, appointed upon the application of the railroad company and commissioned by the Governor, though his salary is paid by the company, is a public officer and derives his authority directly from the state. The opinion points out (page 264 of 87 Ohio St., page 891 of 100 N.E.) that "Police officers, by whomever appointed or elected, are generally regarded as public or state officers deriving their authority from the sovereignty, for the purpose of enforcing the observance of the law * * *."

In Pennsylvania Rd. Co. v. Deal, 116 Ohio St. 408, 156 N.E. 502, a per curiam opinion, the rule announced in Railroad Co. v. Fieback was approved and relied on. The principles there laid down in respect to the functions of police officers, which are controlling here, compel the holding that these plant guards are municipal officers. Their functions and obligations therefore are of a dual character. They have a private obligation to their employer and an obligation to the community as sworn, bonded and commissioned police officers. In case of industrial unrest and strikes on the part of the production employees, the obligations of the plant guards to the municipality and state would be incompatible with their obligations to the Union which, since it represents production employees, authorizes and directs the strike.

As pointed out in our previous opinion, it is the duty of the Board to consider the public interest as a material factor in selecting appropriate units for collective bargaining. Marshall Field & Co. v. National Labor Relations Board, 7 Cir., 135 F.2d 391, 393; National Labor Relations Board v. Delaware-New Jersey Ferry Co., 3 Cir., 128 F.2d 130, 137. We adhere to our conclusion that in the order involved her the Board failed to give adequate consideration to the public welfare. A contrary conclusion would open wide the door to disorderly and criminal acts because of the limitation which the Board's order places on the power of the Government to furnish adequate police protection.

The application to enforce the order on review is denied.