**MEMORIAL HOSPITAL OF ROXBOROUGH, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75–2198.

United States Court of Appeals, Third Circuit.

Argued June 10, 1976.

Decided Oct. 18, 1976.

Ronald Souser, Warren M. Laddon, Robert S. Hodavance, John G. Kruchko, Philadelphia, Pa., for petitioner; Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

William M. Bernstein, N. L. R. B., John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.

Richard L. Epstein, K. Bruce Stickler, Chicago, Ill., for the American Hospital Association, amicus curiae; Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., of counsel.

Before SEITZ, Chief Judge, and ALDISERT and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

■ Prior to the enactment of the nonprofit hospital amendments [1] to the National Labor Relations Act (NLRA) [2] on July 26, 1974, the rights, if any, of employees of nonprofit hospitals to organize and bargain collectively were matters of state law.[3] However, the 1974 amendments brought nonprofit hospitals and their employees within the coverage of the NLRA and subject to the jurisdiction of the National Labor Relations Board (Board).[4]

On this petition for review and cross-petition for enforcement of an unfair labor practice order of the Board, we are presented with a representation dispute in which a state agency, prior to the effective date of the amendments initially exercised jurisdiction. The Board, thereafter, extended comity to the state agency determination and concluded that the employer's refusal to bargain with the employees' representatives constituted unfair labor practices under

---

1. P.L. 93–360, 88 Stat. 395.

2. 29 U.S.C. § 151 et seq.

3. Nonprofit hospitals were excluded from the provisions of the federal statute in § 2(2), 29 U.S.C. § 152(2), which provided:

 [t]he term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include . . . *any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual . . . .* (Emphasis added.)

4. P.L. 93–360 amended the NLRA, effective August 25, 1974, in part by striking out the italicized portion of § 2(2) in footnote 3 above and adding the following new subsection:

 (14) The term "health care institution" shall include any hospital, convalescent hospital, health maintenance organization, health clinic, nursing home, extended care facility, or other institution devoted to the care of sick, infirm, or aged person.

§ 8(a)(1) and (5).[5] Since we hold that the Board's grant of comity with respect to a determination of an appropriate bargaining unit was improper, we grant the petition for review and deny the cross-petition for enforcement.

## I.

On April 17, 1973, Local 835 International Union of Operating Engineers, AFL–CIO (Local 835) petitioned the Pennsylvania Labor Relations Board (PLRB) to approve a proposed unit limited to all maintenance department employees at Memorial Hospital of Roxborough. App. at 1. Memorial Hospital objected to the unit proposed in that it failed to include within it all service department employees as well as maintenance department employees.

A hearing on Local 835's representation petition was held on May 25, 1973. App. at 3–85. On September 21, 1973, the PLRB, based upon the evidence adduced at that hearing, concluded:

> Upon the facts as found herein and our previous decisions, it is the opinion of the Board [PLRB] that separate units should be established for the Service and Maintenance Employees of Memorial Hospital of Roxborough. Accordingly, we find that the unit petitioned for is appropriate.

App. at 90. As a result of this decision, a representation election was ordered in a unit of maintenance department employees only.

After the election in which Local 835 was selected as the exclusive bargaining representative of the unit, Memorial Hospital filed an unfair labor practice complaint with the PLRB. App. at 95. This complaint charged that the union had made material misrepresentations of fact on the eve of the election to which the hospital

could not effectively reply. A hearing as to this charge was held on December 11, 1973. Based upon its finding that the union had not made any material misrepresentations, the PLRB on March 15, 1974 dismissed the hospital's complaint. App. at 241–45. That same day the PLRB entered a *nisi* order of certification designating Local 835 as the exclusive representative of the maintenance department unit. App. at 246–48.

Immediately thereafter Memorial Hospital filed exceptions to the PLRB's dismissal of its unfair labor practices charge arising from the election. On July 2, 1974 the PLRB dismissed the exceptions thereby making its earlier order absolute and final. App. at 256–57.

During August 1974 Local 835 sought to engage in collective bargaining on behalf of the employees of the maintenance department. However, Memorial Hospital, still objecting that the unit was inappropriate and the election invalid, refused to enter into negotiations with the union. Before the union filed with the PLRB any charges of unfair labor practices against Memorial Hospital,[6] and Memorial Hospital sought review of any PLRB orders in the Pennsylvania courts,[7] the nonprofit hospital amendments to the NLRA became effective on August 25, 1974. The federal statute, by preempting the field of labor relations in health care institutions, thus brought the Local 835-Memorial Hospital dispute within the exclusive jurisdiction of the Board. *See* 120 Cong.Rec. S6942, S6991 (May 2, 1974), S7311 (May 7, 1974), S12104 (July 10, 1974); *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

Local 835 then filed an unfair labor practice charge with the Board claiming that Memorial Hospital's refusal to bargain constituted a violation of federal law. Based

---

5. § 8(a)(1) and (5), 29 U.S.C. § 158(a)(1)(5), provide:

 (a) It shall be an unfair labor practice for an employer—

 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

. . . . .

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a).

6. 43 P.S. §§ 1101, 1201.

7. 43 P.S. §§ 1101, 1502.

upon these allegations the regional director of the Board issued a complaint charging Memorial Hospital with having violated § 8(a)(1) and (5) of the NLRA, 29 U.S.C. § 158(a)(1), (5).[8] Memorial Hospital responded by denying that it had any obligation to bargain with Local 835 since the unit was inappropriate and the election improper.

Prior to a hearing on this complaint the General Counsel of the Board moved for summary judgment. The General Counsel argued first that Memorial Hospital's defenses to the complaint raised no factual questions requiring a hearing since they had already been resolved by the PLRB. Second, he urged that the Board grant comity to the certification issued by the PLRB. If comity were granted to the PLRB's determinations the General Counsel contended that Memorial Hospital's defenses would be legally insufficient to resist the unfair labor practice charge.

On April 25, 1975, the Board with one member dissenting, ordered the proceeding transferred to it from the regional director. 217 NLRB No. 99 (1975); App. at 294–98. Thereafter, the Board on September 17, 1975 granted the General Counsel's motion for summary judgment and ordered Memorial Hospital to cease and desist from refusing to bargain with Local 835 as the exclusive representative of the maintenance unit. 220 NLRB No. 73 (1975); App. at 309–320.

In reaching this decision the Board considered as the threshold question whether it "should extend comity to the certification of the PLRB, thereby finding . . . [that Memorial Hospital] is obligated to bargain with the Union as the only elected representative of the majority of employees in the appropriate unit." App. at 311. The Board resolved this question as follows:

> We will recognize the results of an election conducted by a responsible state agency, and therefore extend comity to a certification issued pursuant to such an election, where the state agency's election procedures conform to due process requirements and effectuate the policies of the Act. We have reviewed the decisions, orders, and certifications issued by the PLRB in the completed proceeding before that agency and have considered [Memorial Hospital's] exceptions and supporting arguments to the authority of those documents. Having done so, we find no basis in due process standards and the policies embedded in the Act to warrant a refusal by this Board to recognize the authority of the certification of the PLRB in this proceeding. We shall, therefore, accord the certification the same effect as we would attach to one of our own. (Footnotes omitted.)

Moreover, since Memorial Hospital did not offer any newly discovered or previously unavailable evidence, the Board refused to permit it to relitigate any issues which had been or could have been raised during the prior Pennsylvania representation hearing. Based upon the principle of comity, the Board concluded that Memorial Hospital's refusal to bargain constituted an unfair labor practice under § 8(a)(1) and (5).

Memorial Hospital then petitioned this Court to review the Board's decision and order of September 17, 1975 and the Board cross-petitioned for enforcement. Our jurisdiction is predicated upon § 10(e) and (f) of the NLRA, 29 U.S.C. § 160(e), (f).[9]

---

8. *See* n.5 *supra.*

9. 29 U.S.C. § 160(e) and (f) provide in pertinent part:

> (e) The Board shall have power to petition any court of appeals of the United States, . . . within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order . . . . No objection that has not been urged before the Board, its

member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. . . .

> (f) Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of

## II.

Memorial Hospital urges three arguments upon us here. First, the hospital contends that the Board's September 17, 1975 decision and order is infirm in that the Board failed to articulate its reasons for concluding that the maintenance department alone was an appropriate unit. Although the Board did rely upon its precedents as authority for its decision, Memorial Hospital argues that the cases to which the Board looked do not support a grant of comity under the circumstances presented here. Second, Memorial Hospital urges that the Board failed to resolve its objections to the PLRB election before the Board extended comity to the PLRB certification. Third, the hospital argues that the Board's extension of comity to the underlying orders of the PLRB has precluded any inquiry into the merits of its claims, thereby denying the hospital due process.

In support of Memorial Hospital's petition for review, the American Hospital Association (AHA) sought and was granted leave to file a brief as *amicus curiae*. The AHA contends that the Board's policy of granting comity to state agencies in their determination of bargaining units contravenes the intent of Congress in the enactment of the nonprofit hospital amendments.

The Board responds by articulating three bases in support of its September 17, 1975 decision and order. First, it argues that comity was properly extended to the PLRB unit determination. In this regard the Board notes that the appropriate unit standards relied upon by the PLRB are "virtually identical" to those utilized by the Board. Further the Board asserts that the resulting maintenance unit is not prohibited by the NLRA nor is such a unit inconsistent with other Board decisions. Second, the Board insists that the PLRB properly resolved Memorial Hospital's election challenge. Third, the Board contends that the

appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business . . . . The

General Counsel's motion for summary judgment was lawfully granted.

## III.

Under federal labor law, an employer's failure to bargain collectively with the representatives of his employees constitutes an unfair labor practice only when these representatives have been "designated or selected . . . by the majority of the employees in a unit appropriate for such purposes . . . ." 29 U.S.C. § 159(a). Memorial Hospital attacks both preconditions upon which the Board's finding of an unfair labor practice was necessarily based—the appropriateness of the bargaining unit and the election of the employee representatives. Both preconditions are properly before us on this petition for review and cross-petition for enforcement of the Board's cease and desist order. *Pittsburgh Glass Co. v. NLRB*, 313 U.S. 146, 152, 154, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); *NLRB v. Sun Drug Co.*, 359 F.2d 408, 410 (3d Cir. 1966); *Aircraft Radio Corp. v. NLRB*, 519 F.2d 590, 591–92 n.2 (3d Cir. 1975).

### A.

The Board's power with respect to designating an appropriate unit for collective bargaining is set forth in § 9(b) of the NLRA, 29 U.S.C. § 159(b):

The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof . . . .

In reviewing Board decisions under § 9(b), our function is circumscribed by the nature of the Board's responsibility with respect to the determination of appropriate units. It is clear that

court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section . . . . .

[t]he issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion and the decision of the Board, if not final, is rarely to be disturbed.

*Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). However, while the Board "is accorded broad discretion" in making such decisions, it nevertheless remains for the courts to insure that the exercise of the Board's discretion is not "so unreasonable and arbitrary as to exceed the Board's power" and hence to overstep the law. *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 171–2, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971); *Packard Motor Car Co. v. NLRB, supra*, 330 U.S. at 491, 67 S.Ct. [789] at 793.

Moreover, to allow for judicial review of the Board's appropriate unit decisions, the Supreme Court has emphasized that

[w]hen the Board so exercises the discretion given to it by Congress, it must "disclose the basis of its order" and "give clear indication that it has exercised the discretion with which Congress has empowered it."

■ *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197, 61 S.Ct. 845, 854, 85 L.Ed. 1271. *NLRB v. Metropolitan Life Ins. Co.*, 380 U.S. 438, 443, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965). In articulating the "basis for its order", the Board is free to refer "to other decisions or its general policies laid down in its rules and its annual reports." *Id.* at 443 n.6, 85 S.Ct. at 1064. However, where the Board has reached different conclusions in prior cases, it is essential that the "reasons for the decisions in and distinctions among these cases" be set forth to dispel any appearance of arbitrariness. *Id.* at 442, 85 S.Ct. at 1064.

### B.

With these standards in mind we turn to the Board's decision here concerning the appropriateness of the maintenance depart-

ment unit. As a prerequisite to finding that Memorial Hospital's refusal to bargain with Local 835 constituted an unfair labor practice, the Board concluded that the maintenance unit certified by the PLRB constituted "a unit appropriate for collective bargaining purposes within the meaning of Section 9(b). . . ." App. at 314. However, the Board made this determination without conducting a hearing, without making findings of fact, and without evaluating the facts of this case in light of principles articulated in its prior decisions. *NLRB v. Metropolitan Life Ins. Co., supra.* Rather the Board reached its conclusion as to the appropriateness of the maintenance department unit by adopting as its own the determination made by the PLRB that the maintenance department alone was an appropriate unit.

We are thus not presented with the Board's exercise of discretion. Instead, the Board without employing its discretion, relied upon a substituted policy of comity. The board explained this policy as follows:

We will recognize the results of an election conducted by a responsible state agency, and therefore extend comity to a certification issued pursuant to such an election, where the state agency's election procedures conform to due-process requirements and effectuate the policies of the Act.[5]

[5] *Bluefield Produce & Provision Company*, 117 NLRB 1660 (1957); *The West Indian Co., Ltd.*, 129 NLRB 1203 (1961); *Screen Print Corporation*, 151 NLRB 1266 (1965).

App. at 312. Accordingly, the Board reviewed all the orders and decisions rendered by the PLRB in this case and found "no basis in due-process standards and the policies embedded in the Act to warrant refusal by this Board" to recognize the PLRB certification. *Id.*

We are thus confronted with the question of whether the Board's policy of extending comity to state agency certifications is consistent with the Board's Congressional mandate or whether it "oversteps the law." *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). In answering this question we must analyze

the policy relied upon by the Board and review the statutory authority granted the Board by Congress.

Our inquiry thus begins with the cases cited by the Board in footnote 5 of its opinion as authorizing this "comity" policy. Those cases in our opinion cannot be read to either establish or support any policy of comity with respect to unit determinations.

In *Bluefield Produce & Provision Company*, 117 NLRB 1660 (1957), the parties did not dispute the appropriateness of the bargaining unit as they do here. There the employer and union had stipulated as to the bargaining unit and the Board made a specific finding that the stipulated unit was appropriate for purposes of collective bargaining. In *Bluefield* the employer was charged with violations of § 8(a)(5) and (1) based upon its refusal to bargain with the employee union. The employer contended that although the union had been designated as the representative of a majority of the employees in a state supervised election within a year, it no longer represented a majority. Thus the employer argued that it was under no duty to bargain with the union. In rejecting this argument and in holding that the refusal to bargain constituted an unfair labor practice, the Board stated:

The Board has held, with the approval of the Supreme Court, that a certification based upon a Board-conducted election must be honored for a reasonable period—ordinarily 1 year—in the absence of unusual circumstances. *The Board has also decided that the same effect should be given to certifications based upon secret ballot elections conducted under the auspices of responsible State Government agencies as to Board certifications.* There is no contention in this case that the election conducted by the West Virginia Department of Labor involved any irregularity. In these circumstances we find that the Respondent [employer] was required to honor the certification issued to the Union by the State of West Virginia for 1 year because the change of mind by employees within a few months after the election is not the type of unusual circumstance warranting suspension of the 1-year rule. (Emphasis added.) (Footnotes omitted.) [10]

In *Bluefield*, and the cases on which it relies, the Board accorded comity only to state supervised elections which were free of any irregularity and where no question was presented as to the appropriateness of the unit involved. Hence, *Bluefield* could provide no authority for the Board's exten-

10. In support of its holding the Board, in a footnote, cited two prior cases, *Olin Mathieson Chemical Corporation,* 115 NLRB 1501 (1956) and *T–H Products Company,* 113 NLRB 1246 (1955). In *Olin Mathieson* the petitioner union sought a Board conducted election within twelve months of a prior state supervised election. There was no dispute as to the appropriateness of the unit. The Board dismissed the petition stating:

As it is not contended here that that election was affected by any irregularities, and as it was conducted with an impartial overseer from a state labor department in charge we accord the same effect to the results as we would attach to a determination of representatives based upon an election conducted by the Board. Accordingly, as the employees involved herein have had an opportunity to express their desire as to a bargaining representative within the 12-month period prescribed in the Act, we shall not direct a Board election at this time. *See T–H Products Company,* 113 NLRB 1246.

115 NLRB at 1502.

In *T–H Products Company,* the employer filed a petition for decertification of the union within twelve months of a state supervised consent-election. Again, no question as to the appropriateness of the unit was presented. The Board dismissed the petition stating:

In the instant case the election was held under the auspices of a responsible State government agency and it is not contended that the election was affected by any irregularities. In these circumstances, we shall accord the same effect to the results of the State election as we would attach to a determination of representatives based upon an election conducted by the Board. Accordingly, as the employees involved herein have had an opportunity to express their desires as to a bargaining representative within the 12-month period prescribed in the Act, we shall not direct a Board election at this time. 113 NLRB at 1247.

sion of comity to a case where the appropriateness of the state determined unit is in issue as it is here.

In *The West Indian Co., Ltd.,* 129 NLRB 1203 (1961), the union petitioned for a Board election within twelve months of an election conducted by a department of the Government of the Virgin Islands. No question was raised as to the appropriateness of the employee unit. Relying on *Bluefield Produce & Provision Company, supra,* the Board dismissed the petition stating:

> . . . although the challenge procedures of the Virgin Islands do not conform to the Board's, the parties voluntarily participated in an election, and . . such election was conducted without substantial deviation from due process requirements. The Board concludes that, in view of the above circumstances, the dismissal of the instant petition was in accord with the Board's policy of attributing the same effect to elections conducted by responsible State agencies as to elections conducted by the Board where, as here, such elections afford the employees involved an opportunity to express their true desires as to a collective-bargaining agent, and are not attended by irregularities. As the election conducted by the Virgin Islands agency was conducted within the last 12 months, the Regional Director was warranted in dismissing the petition. *See Bluefield Produce & Provision Company,* 117 NLRB 1660, 1663; *Olin Mathieson Chemical Corporation,* 115 NLRB 1501.

129 NLRB at 1203–1204. Thus, just as in *Bluefield,* comity was again extended not to a unit determination, but to a "state" supervised election where the parties did not dispute the appropriateness of the bargaining unit.

Finally, in *Screen Print Corporation,* 151 NLRB 1266 (1965), the employer was charged with various unfair labor practices including violations of § 8(a)(5) and (1) arising from its refusal to bargain collectively with its employees. This decision indicates that the employer and union had consented to an election in an agreed upon unit. The election was to be held by the Rhode Island State Labor Relations Board. As in the previous cases discussed, there was no dispute as to the appropriateness of the unit certified by the state. After the election, negotiations broke down and the employer refused to bargain further. It was this event which resulted in the unfair practice charge.

As a defense to the unfair labor practices charge, the employer sought to raise objections to the validity of the state certification based upon election irregularities. In disposing of this defense the Board noted in part:

> What controls here, however, is the policy of comity toward certifications of other tribunals. Where the parties have voluntarily submitted the issue, the Board will respect the tribunal's decision even if rendered under standards in variance from the Board's subject only to fundamental considerations of due process.

151 NLRB at 1270.

In all of the cases relied upon by the Board to support the policy of comity employed here, the only issue presented was whether the Board should accord the same effect to a representation election conducted by a state agency as it would to one of its own. No question was raised in *any* of these cases as to the appropriateness of the bargaining units involved. The Board credited the results of these elections since no irregularities appeared and they comported with principles of due process.

Extending comity to state supervised elections in such circumstances is consistent with the provisions of the NLRA. Although the statute does provide for a Board supervised representation election (§ 9(c), 29 U.S.C. § 159(c)), such an election is not required to establish majority status. Section 9(a) states that "[r]epresentatives *designated or selected* for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit . . . ." without specifying any means by

which the designation or selection may take place. 29 U.S.C. § 159(a). (Emphasis added.) Since a union's majority status may be established by means other than a Board election, *United Mine Workers v. Arkansas Oak Flooring Co.*, 351 U.S. 62, 71–72, 76 S.Ct. 559, 100 L.Ed. 941 (1956); *NLRB v. Western Meat Packers, Inc.*, 350 F.2d 804, 805 (10th Cir. 1965), the Board's policy of crediting the results of state-conducted elections that satisfy the requirements of due process does not violate or offend the governing statute.

However, as we have stated, these three decisions relied upon by the Board as authority for its policy of comity are significantly different from the case before us. At issue here is the Board's complete deference to a state agency's unit determination where the employer urges that the unit is inappropriate. In extending the doctrine of comity to include such a situation, the Board has failed to specify any of its own precedents or judicial authority for its action. In an effort to ascertain that authority we thus look to the National Labor Relations Act to determine whether the Board's action has "overstep[ped] the law." *Packard Motor Car Co. v. NLRB*, 330 U.S. at 491, 67 S.Ct. 789.

▮▮ As previously stated, § 9(a) provides that "[r]epresentatives designated or selected for the purposes of collective bargaining . . . in a *unit appropriate* for such purposes, shall be the exclusive representatives of all the employees in such unit . . . ." (Emphasis added.) Although this section is silent as to the manner by which the appropriateness of a unit is to be determined, the following section is quite specific. Section 9(b) provides that

[t]he *Board shall decide in each case* whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act, *the unit appropriate* for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof . . . . (Emphasis added.)

29 U.S.C. § 159(b). Congress has thus mandated Board determination "in each case" of "the unit appropriate" for collective bargaining.[11] Thus the statute requires the Board to exercise its discretion as to an appropriate unit in each and every case. This responsibility can neither be delegated to nor discharged by a state agency where Congress has sought to create a national labor policy by vesting this discretion in a national board. *La Crosse Telephone Corp. v. Wisconsin Employment Relations Board*, 336 U.S. 18, 24–27, 69 S.Ct. 379, 93 L.Ed. 463 (1948). Here, however, the Board abdicated its required duty by accepting the PLRB determination without exercising its own mandated discretion. In so doing the Board "overstep[ped] the law." *Packard Motor Car Co. v. NLRB, supra*, 330 U.S. at 491, 67 S.Ct. 789. This conclusion follows not only from the text of the NLRA, but also from the legislative history of the nonprofit hospital amendments.

▮ The nonprofit hospital amendments to the NLRA do not create special rules for bargaining unit determination in the health industry.[12] However, the legislative history of these amendments does indicate the special concern of Congress with respect to appropriate units in this industry. The re-

---

11. Of course, the Board determination varies depending upon the different factual circumstances present. For example, where the parties have stipulated to the appropriateness of a unit, the Board limits its review to determining that the unit does "not contravene the provisions or purposes of the Act [NLRA] or well-settled Board policies." *Otis Hospital, Inc.*, 219 NLRB No. 55 (1975). *See also St. Joseph Hospital & Medical Center*, 219 NLRB No. 161 (1975). On the other hand, where the parties have disputed the appropriateness of a unit, the Board has applied the various principles and rules for unit determination which it has devel-

oped over the years to the particular facts of the case. *Continental Baking Company*, 99 NLRB 777, 782 (1952).

12. Senator Taft had introduced a bill (S. 2292) to amend the NLRA that would have limited the Board to designating only four appropriate units in health care institutions (units of (1) professional employees, (2) technical employees, (3) clerical employees, and (4) service and maintenance employees). However, this bill was not reported out of committee. *See* 120 Cong.Rec. S6937–41 (May 2, 1974).

ports of both the Senate and House of Representatives explain in identical terms Congress' directive to the Board:

> Due consideration should be given by the Board to preventing proliferation of bargaining units in the health care industry. In this connection, the Committee notes with approval the recent Board decisions in *Four Seasons Nursing Center,* 208 NLRB No. 50, 85 LRRM 1093 (1974), and *Woodland Park Hospital,* 205 NLRB No. 144, 84 LRRM 1075 (1973), as well as the trend toward broader units enunciated in *Extendicare of West Virginia,* 203 NLRB No. 170, 83 LRRM 1242 (1973). (Footnote omitted.) [13]

S.Rep. No. 93–766, 93d Cong., 2d Sess. (1974), 1974 U.S.Code Cong. & Ad.News, pp. 3946, 3950; H.R.Rep. No. 93–1051, 93d Cong., 2d Sess. 6–7 (1974).

■■■ This admonition against the proliferation of units in health care facilities was only to be one of many factors to be considered by the Board. Senator Williams, chairman of the Senate Committee which drafted the amendment and who was sponsor of the legislation, explained the committee's intent as follows:

> . . . The National Labor Relations Board has shown good judgment in establishing appropriate units for the purposes of collective bargaining, particularly in wrestling with units in newly covered industries. While the Board has, as a rule, tended to avoid an unnecessary proliferation of collective bargaining units, sometimes circumstances require that there be a number of bargaining units among nonsupervisory employees, particularly where there is such a history in the area or a notable disparity of interests between employees in different job classifications.
>
> While the committee clearly intends that the Board give due consideration to its admonition to avoid an undue prolifer-

ation of units in the health care industry, it did not within this framework intend to preclude the Board acting in the public interest from exercising its specialized experience and expert knowledge in determining appropriate bargaining units. (*NLRB v. Delaware-New Jersey Ferry Co.,* 128 F.2d 130 (3d Cir. 1942)).

120 Cong.Rec.S. 12104 (July 10, 1974). Congress thus interjected a special consideration into the Board's determination of appropriate units in the health care industry. Although the factor of undue proliferation is not to be controlling in the Board's determination, it does constitute a Congressionally prescribed factor to guide the Board in the exercise of its discretion.

Indeed, the Board itself has stated that its appropriate unit determinations in the health care industry must be made with reference to the legislative history of the amendments. *See The Jewish Hospital Association of Cincinnati,* 223 NLRB No. 91 (1976); *Riverside Methodist Hospital,* 223 NLRB No. 168 (1976). However, in granting comity to the unit determination of the PLRB the Board has neither exercised the discretion that Congress mandated be exercised in § 9(b) of the NLRA nor complied with the Congressional admonition that it consider proliferation of units in the health care industry. As we have said, the Board's action here thus overstepped the law, the national labor policy, and Congress' indicated intent with respect to health care institutions.

Since we conclude that the Board, by granting comity to the PLRB in its unit determination, acted outside its authority, the Board's unfair labor practice order cannot be enforced. It remains for the Board, in the exercise of *its* discretion, to determine if the maintenance department alone is an appropriate unit for bargaining. However the Board may proceed, we would

---

**13.** In *Four Seasons Nursing Center* the Board dismissed a petition for a separate unit of maintenance employees that included three persons. The Board also dismissed a petition for a separate unit of X-ray technicians in *Woodland Park Hospital.* Finally, in *Extendi-* *care of West Virginia* the Board found a unit of service, maintenance, and technical employees appropriate in order to avoid "unwarranted unit fragmentation." 203 NLRB No. 170 (1973).

expect compliance with the directions of *NLRB v. Metropolitan Life Ins. Co.*, 380 U.S. at 442–43, 85 S.Ct. 1061, which require disclosure of the basis of the Board's order and clear indication that the Board has exercised its discretion.[14]

### C.

 Having concluded that the Board's unfair labor practice order cannot be enforced, we find it unnecessary to discuss or decide the other issues presented by the hospital's petition. We recognize that on remand the Board may, in the proper exercise of its discretion, reach the same result as did the PLRB with respect to the appropriateness of the maintenance department unit. If that circumstance does come to pass, the issues raised here by Memorial Hospital concerning the state election procedures may again surface. It would be inappropriate for us to attempt a forecast as to all of these future events. We suggest only that whatever may be the outcome of these proceedings, that the Board develop and furnish an adequate record sufficient to permit informed judicial review of its actions. *Cf. NLRB v. Metropolitan Life Ins. Co., supra.* In this connection we observe that the Board in discussing the challenged election in its September 17, 1975 decision, said only that it had found "no basis in due-process standards and the policies embedded in the Act to warrant a refusal by this Board to recognize the authority of the certification of the PLRB in this proceeding." App. at 312. Such a conclusory statement unsupported by factual findings and without articulation of its reasons is insufficient to satisfy us that the state election was consistent with due process standards and otherwise complied with the requirements of the NLRA.

### D.

We will grant Memorial Hospital's petition for review and will remand to the Board for proceedings consistent herewith. We will deny the Board's cross-petition for enforcement.

SEITZ, Chief Judge (dissenting).

The majority hold that the Board lacked authority to apply comity principles in determining the appropriate bargaining unit. I believe that this result is not mandated by the statute, and infringes upon the proper scope of Board discretion.

The Board, of course, was required to make a determination as to the appropriate bargaining unit. The issue here is whether it could fulfill that obligation by according comity to the findings of the PLRB, assuming that the PLRB's procedures were fair, that it decided the same issue as was before the Board, and that the state policies do not conflict with those embodied in the NLRA.

Comity persuades rather than commands. It declares not how a case should be decided, but rather how it may with propriety be decided. *Mast, Foos & Co. v. Stover Manufacturing Co.*, 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856 (1900). The Board's opinion makes its grasp of these principles apparent. Before according comity, it reviewed the PLRB proceedings and satisfied itself that they were in accord with due process standards and the policies embodied in the NLRA. It specifically found that nothing in the PLRB's unit determination clashed with federal determinations in this area.

In denying that the Board has power to extend comity, the majority rely primarily upon the language of § 9(b), 29 U.S.C. § 159(b) (1970), especially the following: "the Board shall decide in each case whether . . . the unit appropriate . . .

---

14. We would anticipate that the Board would analyze the facts of this case in light of its prior decisions involving unit determinations in the health care industry, and articulate the basis of its decision. *See NLRB v. Metropolitan Life Ins. Co., supra*, at 442–43, 85 S.Ct. 1061. In particular, we note the following seemingly relevant Board decisions: *The Jewish Hospital*

*Association of Cincinnati*, 223 NLRB No. 91 (1976) (separate maintenance unit denied); *Riverside Methodist Hospital*, 223 NLRB No. 168 (1976) (separate maintenance unit denied); *Newington Children's Hospital*, 217 NLRB No. 134 (1975) (service and maintenance unit found appropriate).

shall be the employer unit, craft unit, plant unit, or subdivision thereof." However, it is clear that statutory language directing the Board to determine a particular issue does not necessarily preclude the Board from relying on other processes of law, as long as it can assert a sound policy for doing so. For example, although the Board has jurisdiction to consider charges of unfair labor practices, § 10(a), (b), 29 U.S.C. § 160(a), (b), it may, in its discretion, defer to the resolution of the underlying dispute by arbitration, since this method for settling differences is encouraged by the NLRA. *E.g., Local 2188, AFL–CIO v. NLRB,* 161 U.S.App.D.C. 168, 494 F.2d 1087 (D.C.Cir.), *cert. denied,* 419 U.S. 835, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974). *See Carey v. Westinghouse Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964).

The Board's interest in determining how it will allocate its resources so as best to effectuate federal labor policy cannot be gainsaid. *Associated Press v. NLRB,* 160 U.S.App.D.C. 396, 492 F.2d 662, 668 (1974). Faced with the need to implement a national policy in an area hitherto left to state regulation, the Board could reasonably conclude that according comity to those state labor board decisions which are congruent with federal policy would best serve the purposes of the NLRA. Furthermore, I can find no policy basis for concluding that Congress intended to preclude the Board from exercising discretion in extending comity to the decisions of state labor boards. I therefore cannot agree with the majority that the Board lacked discretion to rely on the PLRB's unit determination.

In view of the disposition of the case, it would not be helpful to discuss the other contentions raised by Petitioner. Having considered them, however, I would deny the review petition and enforce the Board's order.